EMPLOYERS' LIABILITY ASSURANCE CORPORATION *vs.*
GEORGE S. MERRILL.

Suffolk.   December 8, 1891. — January 8, 1892.

Present: HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Accident Insurance — Foreign Insurance Company — Practice — Report by
Single Justice.*

Policies of insurance to indemnify the assured, as owner of a horse, vehicle, or
elevator causing accidental personal injuries for which he may be legally liable,
against claims for compensation therefor, or as landlord or tenant for such
injuries to persons other than employees or persons injured by elevators, or as
a builder or contractor for such injuries to workmen employed by other con-
tractors, and to the public, caused by the assured and his own workmen, but
not caused by a sub-contractor or his workmen, all cover legitimate varieties of
accident insurance, and may lawfully be issued by a foreign insurance company
licensed to issue accident policies and employers' liability policies, or by any
company organized under the insurance act of 1887, c. 214, § 29, cl. 5; and the
fact that a foreign insurance company has issued such policies is not a cause
for the revocation of its license.

The St. of 1890, c. 304, which provides a summary remedy by a petition in equity
to this court in cases of alleged violations of law by foreign insurance compa-
nies, is not intended to take away the power of a single justice of this court to
reserve for the determination of the full court questions of law arising at the
hearing on the petition, except in cases in which the opinion of the single jus-
tice is adverse to the claim of the petitioner.

PETITION IN EQUITY, under the St. of 1890, c. 304, by a for-
eign insurance company, to determine whether the petitioner was
illegally issuing certain forms of policies, as notified by the re-
spondent insurance commissioner.   Hearing before *Holmes, J.*,
who reserved the case for the consideration of the full court,
upon the questions whether the petitioner was lawfully author-
ized to issue the policies complained of, and whether the judge
had a right thus to reserve the case for the consideration of the
full court.   The facts so far as material appear in the opinion.

*J. Lowell & H. M. Rogers*, for the petitioners.

*G. C. Travis*, First Assistant Attorney General, for the Com-
monwealth.

BARKER, J.   The Massachusetts Insurance Act of 1887, c. 214,
declares it unlawful to make any contract of insurance upon or
concerning any property or interests or lives in this Common-

wealth, or with any resident thereof, unless and except as authorized under the provisions of the act, saving only the operations of mutual benefit societies under the Pub. Sts. c. 115, and life and casualty insurance on the assessment plan under the St. of 1885, c. 183.

It is evident, however, that these provisions were not intended to declare all contracts of insurance unlawful, the precise form of which is not settled by statute. The only form of policy prescribed by statute is that of fire insurance. Policies of life insurance, and of the numerous other classes of insurance, are left to the mutual agreement of the parties, subject only to general regulations designed to prevent fraud, and are commonly so framed as to adapt them to the varying necessities of business. If an insurer is authorized to transact a certain class of business, the policies may, within the general lines of the class, be so drawn as to insure against any form of risk which falls within that class, and in which the insured has an insurable interest. Before the year 1879, foreign companies authorized by their charters to transact more than one class of insurance, and admitted here, were not restricted in their operations by our statutes. But since the passage of the St. of 1879, c. 130, such companies, with exceptions not material to the present case, have been required to elect one class or kind of business, and allowed to transact here only that class or kind. The petitioner was admitted on April 1, 1887, and holds a certificate that it is "fully authorized to transact the business of accident insurance within this Commonwealth." Under one of the exceptions above referred to, it may also transact here employers' liability insurance. Its certificate of authority, and its right to transact any business in this State, may be revoked by the insurance commissioner for any violation of law.

It appears that the petitioner has issued certain policies in this State which are declared by the insurance commissioner to be neither accident nor employers' liability policies, and which the commissioner contends that it is unlawful for the petitioner to write, both because they are of another class than those to which it is restricted, and because they are contracts of insurance not authorized by our statute, and therefore illegal, without regard to the contention that they do not belong to the class or kind of insurance which the petitioner may write.

The policies issued by the petitioner are known as "general accident policies," "employers' liability policies," "horse or vehicle policies," "elevator policies," "general liability policies," and "outside liability policies." Its right to issue the four last named is the principal question for decision. If they are of the same kind or class of insurance with general accident policies, they come within the petitioner's authority to transact the business of accident insurance. If they are not of the same kind or class, the petitioner cannot write them here, both because they are a separate class, and because they are not authorized by statute.

Accident insurance has been known in this Commonwealth for many years. It was first offered here in the year 1864 by a foreign corporation. 10 Insurance Commissioners' Reports, 354. An accident insurance company was specially chartered in 1865 (St. 1865, c. 91), but seems never to have written policies. The business was, however, carried on by a number of foreign companies, eleven having been represented in it here in the year 1867, all but two of which had retired in 1869. It has been continuously transacted here by foreign companies. The form of accident policy at first introduced was substantially that now known as the general accident policy. This was a contract insuring against accidents happening to the person of the assured. Casualty companies, insuring against the explosion of steam-boilers, and the breakage of plate glass, appeared some years before the adoption of the St. of 1879, c. 130, restricting foreign companies to one class or kind of insurance; but the only such company required to elect under that act apparently did not question that these were different classes or kinds of insurance from accident insurance, and elected the latter. It was not until the admission of the petitioner, on April 1, 1887, that the question arose whether accident insurance included other than the then well known general accident policies, which, as we have seen, covered only accidents to the person of the assured. From the time of its admission, the petitioner has written not only such policies, but employers' liability policies, under the claim that both were of the accident insurance class. In one sense, there can be no doubt that an employers' liability policy is accident insurance. Such policies cover accidents to others than the as-

sured, but the assured must stand in such a relation to the person accidentally injured or killed as to be legally liable for the result of the accident, and it is only an accident causing bodily injury or death which creates a right to the insurance. The petitioner seems to have been allowed to write both forms of policies as accident insurance, until the passage of the St. of 1889, c. 356, required it to make an additional deposit, and gave explicit authority to issue both forms. Since that time the forms of which the respondent complains have been added, under the claim that they are accident insurance.

The " horse or vehicle policies " have not been issued as separate contracts, but have been either attached to employers' liability policies, or included in the outside liability policies. By this contract the employer is insured against claims for compensation for accidental personal injuries to others than employees, caused by any horses, teams, or vehicles owned by the assured, if engaged in his business and in charge of his employees, the injuries being those for which the assured is legally liable.

The " elevator policies " are issued as separate contracts, or an elevator clause may be inserted in a general liability policy. By the elevator policy or clause the petitioner insures against claims for compensation for accidental personal injuries caused to persons by the elevator of the assured, or its appurtenances, and for which injuries he shall become liable.

The " general liability policies " insure against claims for accidental personal injuries to any persons other than employees or persons injured by elevators, for which the assured may be legally liable in his capacity as landlord or tenant of certain described premises, and, as noted, may also include an elevator clause.

The " outside liability policies " are issued ·to builders and contractors, and insure against claims for compensation for accidental personal injuries to workmen employed by other contractors, and to the public, caused by the assured and by his own workmen, but not caused by a sub-contractor or his workmen ; and, as noted, the horse and vehicle clause is sometimes also inserted in these policies.

Whether such contracts are authorized by our law depends upon the question whether they are included in the term " accident insurance," as used in the petitioner's certificate of admis-

sion and in the insurance act; and whether, if so included, they constitute more than "one class or kind of business," within the meaning of the Pub. Sts. c. 119, § 201, or "one class or kind of insurance," within the meaning of the St. of 1887, c. 214, § 80, of the St. of 1889, c. 356, and of the St. of 1891, c. 195.

It is plain that each of these policies is a contract of insurance, and that in each the assured has an insurable interest in the safety of those whose accidental personal injury is made the foundation of his claim to indemnity. The happening of such an accident will be of disadvantage to the assured, and will subject him to direct pecuniary loss, for which such policies afford him a useful and desirable means of indemnity. Although but recently devised, they are evidently consistent with the general policy of our insurance legislation, and ought not to be held unauthorized unless such appears to be the clear intent of the Legislature.

The distinguishing feature of what is known in our legislation as accident insurance is that it indemnifies against the effects of accidents resulting in bodily injury or death. Its field is not to insure against loss or damage to property, although occasioned by accident. So far as the latter class of insurance has been developed, it has been with reference to boilers, plate glass, and perhaps to domestic animals, and injuries to property by street cars, and is known as casualty insurance. The development of accident insurance has been analogous to the development of fire and of life insurance. The original fire policy stipulated for payment only for the loss of tangible property destroyed or injured in its own substance by fire. But fire insurance is now made to cover rents lost by the destruction of buildings by fire, and profits unearned because of the destruction by fire of a plant by the use of which they would have been secured. The original life policy was payable only at the death of the assured, but now the forms of life insurance are very numerous, and adapted to meet various risks into which the continuation of the life of the person insured enters as a constituent. The invention of accident insurance preceded the recent flood of actions of tort for personal injuries, and the only risk from accidents to the person then commonly thought of as a factor in ordinary life was

the risk of injury to one's own person. Such insurance grew popular, was afterward seen to be too costly for general use, and was abandoned by most of the companies which engaged in the business. But when it came to be understood that every man engaged in business, and every owner or lessee of business property was exposed to heavy losses from accidents to the persons of others, the chance of which no prudent man could afford to ignore, a new demand for accident insurance against personal injuries arose, which it was the legitimate function of accident insurance companies to meet. By the words of clause 5 of § 29 of the statute, (St. 1887, c. 214,) such companies formed or operating in Massachusetts were expressly authorized to insure against bodily injuries and death by accident, and were not by the words of any statute restricted to risks by accidents to the person of the assured. So long as they confined themselves to insurance against accidents to the person, and to contracting to indemnify the assured against losses by injuries to persons in whom he had an insurable interest, because legally liable for the results of the accident, they were within the legitimate scope of accident insurance.

Each of the policies now in question is a variety of accident insurance. In every case it is an accidental personal injury which causes the right to the insurance money to spring up. The indemnity paid is always for the loss caused to the assured by an accident for the effects of which he is legally responsible, and which results in either bodily injury or death.

But does the issuing of such policies by a company transacting a general accident business constitute the transaction of more than one class or kind of insurance, or of business, within the meaning of the statute cited? Clearly not within the meaning of the Pub. Sts. c. 119, §§ 201, 223, in force when the petitioner's license was granted. The argument to the contrary is that the phrase "one class or kind of insurance," used in the St. of 1887, c. 214, § 80, and the amendatory acts, refers to and intends the classes or kinds of insurance to transact which companies may be formed under § 29 of the same statute; and that the authority to form companies "to insure against bodily injury and death by accident," in the fifth clause of § 29, means to insure against such injury or death of the assured only; and so

that this restricted meaning is to be given to the words " acci-
dent insurance." The turning point of the argument is the
assumption that the fifth clause of § 29 authorizes only insur-
ance against accidents happening to the person of the assured.

Looking at the history of the legislation, it is clear that the
phrase " one class or kind of insurance," in the St. of 1887,
c. 214, § 80, was intended to have no different meaning from the
phrase " one class or kind of business," in the Pub. Sts. c. 119,
§ 201, of which it took the place. Section 1 of c. 214 of the St.
of 1887 contains a long list of definitions, but is silent as to this
phrase. It first appears in both forms in the St. of 1879, c. 130,
§§ 1, 2, and has since been retained as a provision affecting the
rights of foreign companies, presumably with unchanged signifi-
cance. Before its original enactment, foreign companies, under
certain conditions not restricting the classes of risks which they
might write, were allowed to transact business here. A license
or certificate of authority from the insurance commissioner was
first provided for by the St. of 1878, c. 130, § 6, and the foreign
company to whom it was issued was thereupon " authorized to
transact business in this Commonwealth," and was restricted
only by its charter. The requirement that foreign companies
should elect and be restricted to one class or kind of insurance
was imposed by the St. of 1878, c. 130, and has since remained
in force. Looking to the state of our legislation at the time of
its original enactment for the meaning of the phrase, it is clear
it was not intended to have the meaning for which the respond-
ent contends. At that date, the only insurance companies
which could be here formed under general law were fire, marine,
and plate glass companies. But foreign companies were trans-
acting here not only these kinds of insurance, but life, accident,
and steam-boiler insurance. The practical construction of the
law by the executive departments is shown, not only by the
admission of other foreign companies of kinds which could not
be formed under our general laws then existing, but by the ad-
mission of the petitioner itself at a time when our statutes did
not provide for the formation of accident or employers' liability
companies. We see nothing, either in the Massachusetts Insur-
ance Act of 1887, or its amendments, or in our previous legislation,
that leads us to believe that the Legislature has ever intended

to deprive the citizens of the Commonwealth of the benefits of any useful form of insurance, merely because it was newly devised or offered only by foreign companies. On the contrary, the course of legislation has been to allow such forms of insurance to be offered here by foreign companies whose solvency and good faith were assured, and then to provide by special charters or general laws for the formation of home companies to transact similar business.

The question is not, therefore, necessarily the same as that whether a company formed under the St. of 1887, c. 214, § 29, cl. 5, " to insure against bodily injury and death by accident," could issue the same forms of policies which the petitioner has issued. But we see no reason why such a company may not lawfully issue any form of insurance in which the assured is indemnified, either against legal claims to compensation for the personal injury or death of those for whose safety he is answerable, or against the personal injury or death of those in whose safety he has some other insurable interest; except that we think that employers' liability insurance has now acquired such a standing in the commercial world and in legislation, as a distinct class or kind of insurance, that, although it might have been held to be accident insurance merely, the Legislature did not intend that companies formed under clause 5 of § 29 should have power to insure employers' liability risks for the insurance of which risks companies may be formed under clause 7.

We regard the granting of a special charter for a home corporation to insure " persons or corporations, interested in real estate, against liability to any persons on account of personal injuries caused by accidents happening upon or originating from such real estate," by the Legislature of 1888, (St. 1888, c. 205,) without an amendment of the general law, as conclusive upon the point that at least one of the forms of policies to which the respondent objects was deemed by the Legislature to belong to the class of accident insurance; and we think that such policies cannot be distinguished in principle from the others which he questions. In our opinion, all of them are legitimate varieties of accident insurance, and may be lawfully issued by the petitioner, and by any company formed under the St. of 1887, c. 214, § 29, cl. 5. The fact that the petitioner has issued them is no cause for the revocation of its license.

The remaining question is one of procedure. The statute authorizing such petitions, (St. 1890, c. 304,*) provides that the Supreme Judicial Court shall summarily hear and determine the question whether a violation of law has been committed, and that, if the decree is adverse to the petitioner, an appeal may be taken to the full court, while in the mean time the insurance commissioner may issue an order revoking the right of the petitioning company to do business here, until the determination of the question by the full court. The respondent contends that a single justice cannot reserve questions of law arising upon the hearing of such petitions without first himself determining them. But as no appeal is provided in the act unless the determination is adverse to the petitioner, we think the power of a single justice to reserve questions of law is not intended to be interfered with, unless in his opinion they should be determined adversely to the petitioner. Such a construction is favorable to the respondent, and cannot in any case allow an insurer to continue a course of conduct which, in the opinion of the justice, is in violation of law.

The petitioner is entitled to a decree declaring that the policies mentioned in the respondent's notice issued to it under the St. of 1890, c. 304, are not in violation of law.    *So ordered.*

---

* This statute is as follows :

"Section 1. Whenever, in the opinion of the insurance commissioner, a foreign insurance company doing business in this Commonwealth is conducting or attempting to conduct its business in violation of the laws of this Commonwealth, he shall, unless the supposed violation of law relates only to the financial condition or soundness of the company, or to a deficiency in its assets, notify the company not less than ten days before revoking its authority to do business in this Commonwealth; and he shall specify in the notice the particulars of the supposed violation. The Supreme Judicial Court, upon petition of said company brought within the ten days aforesaid, shall summarily hear and determine the question whether such violation has been committed, and shall make any proper order or decree therein and enforce the same by any appropriate process. If the order or decree is adverse to the petitioning company, an appeal therefrom may be taken to the full court; and in the case of such appeal the commissioner may issue his order revoking the right of said petitioning company to do business in this Commonwealth until the final determination of the question by the full court aforesaid.

"Section 2. Neither this act nor any proceedings thereunder shall affect any criminal prosecution or proceeding for the enforcement of any fine, penalty, or forfeiture."