STATE *ex rel.* MOSES E. CLAPP, Attorney General, *vs.* THE FEDERAL INVESTMENT CO.

Argued Jan. 8, 1892. Decided Jan. 18, 1892.

Insurance—Defined.—The respondent corporation *held* not to be a life, endowment, or casualty insurance company, and hence not subject to the provisions of Laws 1885, ch. 184.

*Quo warranto* on relation of Moses E. Clapp, attorney general, against the Federal Investment Company.

The respondent claims to be a corporation organized in this state. Its business is carried on by the admission of members. A person on becoming a member is required to pay $5 admission fee, and $2 monthly dues each month in advance, so long as he continues to be a member. This $5 and 15 per cent. of the monthly dues go to pay agents' commissions, and expenses of the business. Another 15 per

cent. goes into a reserve fund. The balance is called a maturity fund, and, as often as $100 accumulates, it is paid to the member holding the oldest outstanding certificate, and he goes out.

*Moses E. Clapp,* Atty. Gen., for relator.

*J. E. Waters,* for respondent.

MITCHELL, J. The question in this case is whether the respondent is a corporation of the kind or kinds referred to in Laws 1885, ch. 184, and as such subject to its provisions. To bring a corporation within this act, it must be (1) an *insurance* company (2) transacting the business of *life, casualty,* or *endowment* insurance (3) upon the *co-operative* or *assessment* plan. This is perfectly apparent from both the title and the first section of the act. If any of its provisions apply to corporations of any other kind, they would clearly not be embraced within the subject expressed in the title. The very essence of any definition of insurance is indemnity for loss in respect of a specified subject. The contract of life insurance, or of insurance upon a life, in the ordinary form, is a contract to pay a certain sum of money on the death of the insured. Another form, known as "endowment insurance," is a contract to pay a certain sum to the insured if he lives a certain length of time, or, if he dies before that time, to some other person indicated. In either of these forms the contract is, strictly speaking, an insurance on the life of the party, although the latter is generally denominated "endowment" insurance. *Briggs* v. *McCullough,* 36 Cal. 542. "Casualty" insurance has a well-defined meaning, as insurance against loss, through accidents or casualties resulting in bodily injury or death. As applied to injuries resulting in death, this is really but a contract of life insurance limited to specified risks. Of course, neither the times nor amounts of payments by the assured, nor the modes of estimating or securing the payment of the sum to be paid by the insurance, are important or controlling in determining whether a transaction is a contract of insurance, but, in order to render it such, it must contain the essential element of indemnity for loss in respect to some specified subject from some specified risks; and, to constitute a contract one of either a life, endowment, or casualty insurance, the payment of the indemnity must be contingent, either upon the duration of human life, or

the happening of a casualty resulting in bodily injury to the insured. Upon examination of the constitution and by-laws of the respondent, we fail to discover that the business which it is organized to carry on has any of the essential elements of either life, endowment, or casualty insurance, or of insurance of any kind. The articles of incorporation provide "that the general nature of the business to be transacted by this corporation shall be to provide the means for profitably investing, for certificate holders, small sums of money, to be paid in monthly installments, until the sum so accumulated shall reach a sufficient amount to redeem, in the order of their issuance. all outstanding certificates of the company in force." The by-laws merely provide a detailed method by which this shall be carried into effect. We shall not attempt to state the provisions of these by-laws, as they will speak for themselves. Suffice it to say that it clearly appears that the certificates issued to members are in no respect contracts of indemnity against loss of any kind, nor is their payment contingent either upon the duration of human life or the happening of any casualty. There is no more reason for calling the respondent's business a life, endowment, or casualty insurance, or, in fact, insurance of any kind, than there would be in the case of a building or other similar society. The relator relies on the definition of the business of life or endowment insurance upon the co-operative plan, given in section five (5) of the act of 1885, as being comprehensive enough to include the respondent. If that definition is as broad as claimed, we would be confronted with the difficulty that the act would include subjects not embraced in its title,—a difficulty that cannot be avoided by arbitrary definitions contained in the body of the act. But read and construed in the light of the title, as well as the first section, we are satisfied that section five (5) was not intended to bring within the provisions of the act associations not engaged in the business of life, endowment, or casualty insurance. It is well known that frequently societies whose business is, in its essential nature, life, endowment, or casualty insurance, call themselves by some other name, and adopt some peculiar method of conducting their business, in order to avoid compliance with the provisions of statute regulating such insurance companies. It seems to us that the object of section

five (5) is to prevent all such evasions of the law, and to bring within its provisions all associations who do an essentially life, endowment, or casualty insurance business, without regard to the particular method in which it is conducted. The business of the respondent may be within the mischiefs of the act, but is certainly not within its terms.

Writ quashed.

(Opinion published 50 N. W. Rep. 1028.)