STANDARD LIFE & ACCIDENT INSURANCE CO. *v.* JOHN R. SAYLER, EXECUTOR.*

1. An insurance company doing a business of "life" and "accident" insurance, unless an assessment company, is within the purview of Section 3625, Revised Statutes, relative to the materiality of a false answer made by applicant, and also of Section 3626, Revised Statutes, creating an estoppel as to certain defenses.

2. An answer, in a suit on a policy of insurance, alleging a misstatement in the application therefor and that it was false, material, and that the policy was issued in reliance thereon, is

---

* Affirmed by Supreme Court, 73 O. St. 340.

insufficient to constitute a defense; it should also allege wilfulness and fraud on the part of the applicant and want of knowledge on the part of the agent or company.

3. Testimony that plaintiff was blind in one eye and that his vision in the other was defective, such condition being of such a character as to be visible to every one, is not sufficient to show fraudulent intent in plaintiff in answering that he had no bodily or mental infirmity.

4. Section 3626, Revised Statutes, which estops an insurance company from defending an action on an insurance policy on the ground of misstatements by plaintiff made at the time of application, if three annual premiums have been since paid, will include within its purview, policy contracts issued in place of old policies on which three such payments have been made. Such contracts must be regarded as renewals of the old policies, and not as new ones.

HOSEA, J.; HOFFHEIMER and CALDWELL, JJ., concur.

Error to special term.

The executors of William Stacey, deceased, filed a petition in the Superior Court of Cincinnati, upon two policies of insurance issued by the Standard Life & Accident Insurance Company, of Detroit, Michigan, to William Stacey, of Cincinnati. Both policies covered loss of time resulting from bodily injuries suffered during the term of said insurance by external, violent and accidental means, disabling the insured; and if death resulted within ninety days from such bodily injuries as the proximate cause and sole cause thereof, then the company was to pay $5,000 on each policy to his executors.

William Stacey died on the morning of June 17, 1901, as a result of bodily injuries caused by external, violent and accidental means as the proximate and sole cause thereof, during the term of the policies.

The petition further alleges that William Stacey and his said executors duly performed all the conditions of said policies on their part to be performed; that due and immediate written notice was given to the company at Detroit, Michigan, of the accident and injury causing death; and thereafter, within two months from the death of William Stacey,

to-wit, on or about July 17, 1901, direct and positive proof of his death was furnished to said company at Detroit, Michigan; that payment of both policies has been demanded, but that no part thereof has been paid; and the said executors, plaintiffs below, prayed judgment against the Standard Life & Accident Insurance Company, of Detroit, for the sum of $10,000, with interest from October 17, 1901.

The insurance company answers, among other things, that each of said policies contained certain statements, which are part of the contract of insurance as a condition that if untrue in any respect, the policy shall be null and void; said statements being as follows:

"I have never had any fits or disorders of the brain, vertigo, or hernia, or any bodily or mental infirmity or disorder as herein stated. My habits of life are correct and temperate, and I am in sound condition mentally and physically, except as herein stated."

And the company avers that William Stacey, at the time of the acceptance of said policy, did have a bodily infirmity, in that he was practically blind in one eye and the sight of the other was impaired; that said representation was therefore untrue and was material, and the said policies of insurance would not have been issued had the truth been disclosed to the insurance company; that by reason of said statement and reliance thereon, the insurance company issued to the said William Stacey said policies as a select risk, meaning thereby the highest amount of insurance for the least amount of money of any class of insurance issued by the company; that had the fact been disclosed that he was blind in one eye, he would have fallen under the company's classification known as "cripples," which, under the company's rules, can only be insured at an advanced rate upon special application at the company's principal office; and by reason of said untrue statement said policies are null, void and of no effect.

The executors, by reply, admit that so much of the answer as purports to be copied from the policies of insurance is correctly copied, and that the statements of the

said William Stacey in his application for the said policies as recited therein did not contain a statement that he had either of said infirmities or disorders; and deny every other allegation contained in the said answers.

For a second reply the executors allege that the company is estopped from defending on the grounds set out in said answer, for the reason that the said William Stacey became insured under policy No. D.171774 on July 25, 1892, and under policy No. D.175401 on November 5, 1892, and continued such insurance and said premiums on said policies down to and including the premiums due in July, 1899, and November, 1899, respectively, carrying said policies in force until in July, 1900, and November, 1900, respectively, when the policies sued on were at the instance of the said company issued to William Stacey in place of said former policies and for the purpose of and thereby continuing his said insurance.

The insurance company, defendant below, filed demurrers to the second ground of replies so filed by plaintiff below, which demurrers were fully argued and overruled.

Subsequently the case came on for trial before the court and a jury, and after the testimony was submitted upon both sides, and after the court had passed on the admissibility of certain evidence offered by the insurance company, the court instructed the jury to return a verdict for the plaintiff below for $11,400.

The errors assigned are:

1. The sustaining of the demurrers to the replies.

2. Construing the policies of 1900 as renewals of the policies of 1892 and admitting evidence thereof.

3. Excluding testimony offered by defendant company and directing a verdict.

The real questions for determination here arise under Sections 3625 and 3626, Revised Statutes, which provide as follows:

Section 3625. "No answer to any interrogatory made by an applicant, in his or her application for a policy, shall

bar the right to recover upon any policy issued upon such application, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is willfully false and was fraudulently made; that it is material and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, moreover, that the agent or company had no knowledge of the falsity or fraud of such answer."

Section 3626. "All companies, after having received three annual premiums on any policy issued on the life of any person in this state, are estopped from defending, upon any other ground than fraud against any claim arising upon such policy by reason of any errors, omissions or misstatements of the assured in any application made by such assured on which the policy was issued, except as to age."

It is claimed in behalf of plaintiff in error that these sections are limited in their operation to ordinary "life" companies and do not apply to so-called "accident" companies. But a careful reading of Chapter 10, Revised Statutes, in which these sections occur, satisfies us that the company doing a business of "life" and "accident" insurance is within the purview of these sections, excepting assessment companies provided for in Section 2630, Revised Statutes, which, by the terms of the act, are excepted from the operation of the laws relating to life insurance companies. *State* v. *Protection Assn.,* 26 Ohio St., 19.

We agree with the opinion of the court below, in deciding the demurrer, that:

"A policy of insurance issued by a so-called 'accident' company, as applicable to injuries resulting in death, is but a contract of life insurance limited to specified risks; that is, a policy on the life of a person, but insuring against death from certain specified risks. See Kerr, Life Ins., 5; *State* v. *Investment Co.,* 48 Minn., 110 (50 N. W. Rep., 1028)."

The policies being within the purview of the statutes, the question of their applicability in the present case de-

pends upon the facts and conditions of the case itself with respect to each of the sections separately.

First.   Section 3625 has reference to an untrue statement in an application for a policy which, if relied upon as a defense against payment under the policy, requires "clear proof"—

(a)   That it is willfully false.

(b)   That it is fraudulently made.

(c)   That it was material.

(d)   That it induced the company to issue the policy.

(e)   That but for such statement the policy would not have been issued.

(f)   That the agent or company had no knowledge of the falsity or fraud.

The meaning of these provisions under the rule of construction requiring us to give effect to each is reasonably clear:

(a)   A statement may be false in fact, yet not willfully so.

(b)   It may be willfully false (that is, made with knowledge of its falsity), yet not fraudulent (that is, in addition to knowledge of falsity, made with intent to deceive, and thereby gain an unlawful advantage).

(c)   It may be false, yet not material (that is, relating to unimportant particulars).

(d)   It must be of such consequence as induced the company to issue the policy; and this is emphasized in the following condition:

 (e)   That, but for such answer, the policy would not have been issued.

Lastly,

(f)   The agent or company must have been ignorant of the falsity or the fraud of the answer.

The proof as to each of these facts must be clear before the defense will avail.   But, to entitle a defendant to prove specific facts as a defense they must be pleaded.   It will be observed that the requirements of the statute are cumulative and not alternative, and that the terms of the statute

imply the pleading as well as the proof, for the language is in the alternative, viz., that the answer objected to shall not "bar the right to recover," "or be used in evidence," unless, etc.

The answer alleges falsity, materiality, and the issue of the policy upon the faith of the representation *sine qua non;* but it does not allege willfulness, fraud, or want of knowledge of the agent or company, and therefore does not state facts sufficient under the statute to constitute a defense.

The tesimony, moreover, establishes beyond a reasonable doubt that the death was caused wholly by external injuries and excludes the physical defect involved in the answer as a contributory cause; so that, if "materiality" under the statute could be held to mean the relation of the defect to the causes of death under the facts of a given case, the proof fails to show materiality in such sense. Nor does the testimony sustain a charge of fraudulent intent. Fraud is not to be presumed; and without entering upon a full analysis of the testimony here, our conclusion is that fraudulent intent is not established. There was no original application for these policies *per se*. They were sent to the defendant, filled out and executed upon the basis of facts involved in the policies of 1892, without other explanation than that the policies were more beneficial to the insured than the old. While for some purposes his acceptance without dissent makes these to all intents new affirmations, yet, upon the question of fraudulent intent, this proof alone would not be sufficient. The collateral circumstances do not show that the matter of his then physical condition was recalled to his attention or that he knew or realized that he was making a new contract as contradistinguished from a mere renewal of the old. In fact, the testimony does not affirmatively show that he, at any time, intended a willfully false statement, much less one springing from a fraudulent purpose.

The statement related to "bodily infirmity or disorder," and it is fairly conceivable that Stacey may have taken the word "infirmity" in its primary sense as relating to a condition of weakness or an unhealthy state of the body

(Century Dict.). He had a defect, but not an unsound or unhealthy condition. A man might fairly suppose that the word "infirmity," in its collocation with "disorder," meant a weakness (as of some hidden organ) tending to disorder, taking the latter word in the sense of an active malady.

For like reasons his assertion that he was in "sound condition mentally and physically" may have been, in his thought, consistent with a defective power of vision. The questions were not only very general and susceptible of a very general answer, but from their terms might well have been understood to refer only to conditions of disease related to the vital organs as to which he alone possessed knowledge, and not to bodily defects such as were visible to every one.

The defect of the eye complained of was of such a character as to be visible to every one who met him, and this suggests at least an inference that it was known to the agents of the company who originally insured him, and who collected the premiums year after year, and there seems to be no testimony to the contrary, except the bare denial of Reno alone.

While the proposition that the greater includes the less is axiomatic in its proper place, it will not serve as a rule of evidence where fraud is to be proved, and the fact in issue relates to an element only inferentially included in a general and not a specific statement. To hold otherwise would open the door to a return to those conditions which is the object of the statute to remedy; for it would deprive the requirement of the statute of all vital force.

The statutes in question fall clearly within the class specified in *Insurance Co.* v. *Leslie,* 47 Ohio St., 409, 413, designed to "protect the assured against unreasonable forfeiture and defenses;" and the policies in issue here were taken in full view of these provisions which hold up a warning finger to companies that if they take risks without proper examination in their own behalf, they do so at their peril within the statutory limitations. See *Dwelling-House Ins. Co.* v. *Webster,* 4 Circ. Dec., 704 (7 R., 511) ; *New*

*York Life Ins. Co.* v. *Block,* 6 Circ. Dec., 166 (12 R., 224); *Hanner* v. *Insurance Co.,* 49 Bull., 140, affirmed, *Aetna Life Ins. Co.* v. *Hanner,* 69 Ohio St., 568, no report.

We are of opinion, therefore, that under Section 3625, Revised Statutes, the action of the court below is justifiable, because both in pleading and proof the plaintiff in error failed to establish its defense.

Second. Section 3626, Revised Statutes, creates an estoppel against maintaining a defense of the character interposed in this case, if three annual premiums had been paid and received upon the policy.

The proof here shows that Stacey took out policies in 1892; that these were kept alive by renewals until 1899, when, instead of renewing in the usual manner by renewal receipts, the company, without consulting Stacey, sent the present policies for his acceptance with a statement that this was:

"For the reason that we (they) were taking up all our (their) old policies and putting out new policy contracts with our (their) policy holders, because the new ones give more benefit to the insured, and we (they) wanted to give the assured the benefit of the increase in the policies."

Th plaintiff in error claims that this was an entirely new contract, acceptance of which by Stacey, abrogated the old, and that Section 3626, Revised Statutes, therefore, can not be applied to the case. The logic of this defense is that, by making the written contracts in terms annual, the statute could never apply at all, though the insurance be really renewed year by year without break. But why should we give so strained and narrow a construction to a statute obviously declaring a rule of public policy? The evil designed to be remedied was of this very character; namely, the rigid interpretation of written contracts, by rules established primarily upon agreements where parties stand upon an equal footing and presumably expressed on both sides their well-considered intentions. The business of insurance long ago outgrew such conditions, and developed special contracts, prepared in all cases by the insurer, based

upon complicated data of which the insured usually possesses little comprehension.

Taking into view the remedial purposes of the statute and the conditions under which it was obviously designed to operate, we are constrained to give the word "policy" a broader signification than that of the mere document and regard it as synonymous with "agreement," in the broad sense, of which the written document is a mere form of expression.

The argument of the plaintiff in error tends to force this conclusion by showing that on any other basis the statute is nugatory·so far as these companies are concerned. The argument is that the renewals of the 1892 policy made each year a new and independent contract, just as in the case of ordinary fire policies.

"If under those conditions," it is argued, "the contract was from year to year * * * how can it be claimed that the provisions of Section 3626, Revised Statutes, are applicable, even if an entirely new policy had not been issued in 1900, or if that policy was treated as a continuation of the annual renewals?"

We can not agree with this view.  These contracts, as we regard them, are like leases of uncertain duration which were long ago construed by the English courts to be leases from year to year, which, though either party had the right to terminate at will at the expiration of any year, were expected to continue indefinitely—each continuance of occupancy after termination of the year being equivalent to a new entry.  Even in such cases a change in rental or other detail made by agreement did not affect the general nature of the tenancy.

If we are correct in our construction of the statute, it applied to the agreement as renewed up to. 1900; and, under the circumstances of this case, we can not but regard the new policies of 1900 as, in effect and for the purposes of the statute, a renewal of the old agreement of insurance, voluntarily modified by the plaintiff in error and accepted by Stacey as to certain details, but essentially the same in gen-

eral character. The insurance was in fact continuous from 1892 until Stacey's death.

It follows from these views that the new policy was in fact a renewal of his insurance contract, and as more than three annual payments had been made thereon, the case falls also within the purview of Section 3626, Revised Statutes, whereby the plaintiff in error was estopped from making defense upon the statements in question.

Further questions suggested in argument we do not find it necessary to consider in view of the foregoing. We find no error in the action of the court below, and the judgment is therefore affirmed.

Judgment affirmed.

*Robertson & Buchwalter,* for plaintiff in error.

*Sayler & Sayler* and *Charles H. Fiske,* for defendant in error.