THE PEOPLE *ex rel.* Arthur Gosling *et al.* Appellants, *vs.* RUFUS M. POTTS, Insurance Superintendent, Appellee.

*Opinion filed October 16, 1914.*

1. INSURANCE—*guaranty insurance defined.*   Guaranty insurance is a contract whereby one, for a consideration, agrees to indemnify another against loss arising from the want of integrity, fidelity or insolvency of employees and persons holding positions of trust, against insolvency of debtors, losses in trade, losses from non-payment of notes and other evidences of indebtedness, or against breaches of contract.

2. SAME—*a corporation to guarantee notes and mortgages may organize under the Surety act.*   A corporation having for its object guaranteeing the payment of notes, bonds, coupons and other evidences of indebtedness secured by mortgage or deed of trust conveying real estate, may organize, in Illinois, under the Surety act of 1899, (Hurd's Stat. 1913, p. 602,) authorizing the formation of corporations to guarantee the performance, by persons, firms and corporations, of contracts, bonds and undertakings of any kind.

3. SAME—*section 1 of the Casualty act does not apply to mortgage guaranty insurance.* The organization of a corporation to guarantee the payment of notes, bonds and other evidences of indebtedness secured by real estate mortgage or deed of trust is not authorized by paragraph 7 of section 1 of the Casualty act, (Hurd's Stat. 1913, p. 1466,) providing for the organization of corporations to insure against "any other casualty or insurance risk specified in the article of organization, which may lawfully be the subject of insurance and the formation of corporations for insuring against which is not otherwise provided for by these statutes."

4. SAME—*object of corporation not limited to words of Surety act.* It is no objection to the oragnization of a corporation under the Surety act that the statement of the purposes of the corporation specifies the particular kind of contracts which the corporation intends to guarantee, even though the statement contains more than the exact language of the statute, provided such contracts are within the general language of the statute.

5. CONSTITUTIONAL LAW—*title to Surety act is broad enough to cover guaranty insurance.* The title of the Surety act of 1899 (Hurd's Stat. 1913, p. 602,) is broad enough to cover guaranty insurance, and the act is therefore not unconstitutional on the ground that the title does not cover the subject matter of the act.

6. MANDAMUS—*when mandamus will lie to compel insurance superintendent to act.* Where a dispute arises between proposed incorporators and the insurance superintendent as to which of two statutes shall govern the organization of the corporation, the case is not one which merely involves the discretion of a public officer but it involves also the construction of the statutes, and in such case *mandamus* will lie to determine whether the insurance superintendent has correctly construed them.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

MAYER, MEYER, AUSTRIAN & PLATT, JOHN T. EVANS, and LEO J. DOYLE, for appellants.

ARCHIBALD A. McKINLEY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a petition for *mandamus* filed in the circuit court of Sangamon county in behalf of the relators, (appellants here,) to compel appellee, the superintendent of

insurance of this State, to take the necessary steps to au-
thorize the incorporation of a company to be known as the
Chicago Mortgage Guaranty Company. Appellee answered
the petition, stating his willingness to permit the incorpo-
ration of said company under another act than that under
which it was requested to be incorporated but denying the
right of the relators to incorporate as petitioned by them.
A demurrer filed to this answer having been overruled by
the court, relators elected to stand by the demurrer, where-
upon the prayer of the petition was denied and the petition
dismissed at relators' cost. This appeal followed.

The relators stated in the petition for *mandamus* that
they were desirous of incorporating under "An act to pro-
vide for the organization, management and regulation of
surety companies," approved and in force April 17, 1899.
(Hurd's Stat. 1913, p. 602.) Section 1 of that act provides
that not less than three nor more than seven may organize
a corporation "for the purpose of guaranteeing the fidelity
of persons holding public or private places of trust, and
the performance by persons, firms and corporations of con-
tracts, bonds, recognizances and undertakings of every kind,
and of becoming surety on bonds required by law, and on
every kind of contract, obligation and undertaking of per-
sons, firms and corporations." It is conceded that the re-
lators, if they are entitled to incorporate under this act,
have complied with the preliminary provisions necessary to
authorize such incorporation by the authorities of the State,
except that some question is raised as to the contents of
their declaration, which will be referred to later. The
declaration upon which they ask for a charter under the
Surety act stated the purposes as follows: "To guarantee
and secure the payment and satisfaction of notes, bonds,
coupons and other evidences of indebtedness secured by
mortgage or deed of trust conveying real estate, and to
guarantee the performance, by persons, firms and corpora-
tions, of all other contracts, bonds, recognizances and un-

dertakings of every kind, and to become surety on bonds required by law, and on every kind of contract, obligation and undertaking of persons, firms and corporations."

It is argued by counsel for appellee that under a proper construction of the Surety act the State would not be authorized to issue a charter thereunder for the purposes set forth in said declaration; that a corporation for those purposes must be organized, if at all, under "An act to incorporate and to govern casualty insurance companies and to control such companies of this State and of other States doing business in the State of Illinois," etc., approved April 21, 1899, and in force July 1, 1899. (Hurd's Stat. 1913, p. 1466.) Section 1 of that act states that any number of persons, not less than thirteen, may form a corporation for the purpose of issuing policies for any of the following "kinds of insurance business," then setting out in detail, under seven separate paragraphs, various kinds of insurance business. The seventh paragraph of this section, under which counsel for appellee claims that this charter should be issued, reads as follows:

"*Seventh*—Against any other casualty or insurance risk specified in the article of organization, which may lawfully be the subject of insurance and the formation of corporation for insuring against which is not otherwise provided for by these statutes."

Relators contend that the Surety act clearly authorizes them to be incorporated under it, and therefore the incorporation is not authorized under said paragraph 7 of the Casualty act, as its organization is "otherwise provided for by these statutes."

Counsel, in their briefs, have argued exhaustively as to the meaning of "casualty insurance," "guaranty insurance," and other insurance terms. Appellee contends that the term "casualty insurance" covers all kinds of insurance; that under the definition given of "casualty" by standard authorities it may have the same meaning as "happening" or

"event." An examination of the authorities on this question shows there is a great diversity of meaning as to the various words used in defining the different kinds of insurance. In a case frequently cited, (*Employers' Liability Assurance Corporation* v. *Merrill,* 155 Mass. 404,) it was held that so far as casualty insurance was developed under the law of that State it had reference to boilers, plate glass, and perhaps to domestic animals and injuries to property by street cars, but not to accidents to persons. (See, also, 6 Cyc. 701; 1 id. 308; 3 Joyce on Insurance, sec. 2862.) The phrase "casualty insurance" is frequently used with a much broader meaning, not only by writers but by legislative bodies. (14 Ency. Britannica,—11th ed.—659; 13 Am. & Eng. Ency. of Law,—2d ed.—3; *People* v. *Fidelity and Casualty Co. of New York,* 153 Ill. 25.) Neither is the phrase "guaranty insurance" used with any hard and fast meaning. The term may include all insurance as being synonymous therewith, for insurance has for its purpose to guarantee against all forms of loss or pecuniary injury. (2 May on Insurance,—4th ed.—sec. 540.) It has been stated to be generic in its scope and signification, embracing within it "those subsidiary species of insurance contracts known as 'fidelity,' 'commercial' and 'judicial' insurance." (Frost on Guaranty Insurance,—2d ed.—sec. 1.) Guaranty insurance, as ordinarily used and understood, is a guaranty or insurance against loss in case a person named shall make a designated default or be guilty of a specified misconduct. "It is usually against the dishonesty of an employee or officer, though sometimes against the breach of a contract." (15 Am. & Eng. Ency. of Law,—2d ed.— note 1, p. 1; *People* v. *Fidelity and Casualty Co. of New York, supra.*) "Guaranty insurance is a contract whereby one, for a consideration, agrees to indemnify another against loss arising from the want of integrity, fidelity or insolvency of employees and persons holding positions of trust, against insolvency of debtors, losses in trade, losses from

non-payment of notes and other evidences of indebtedness, or against other breaches of contract. It includes other forms of insurance which are specially classified, such as 'fidelity guaranty,' 'credit guaranty,' " etc. (1 Joyce on Insurance, sec. 12.) This definition was quoted with approval by this court in *People* v. *Rose,* 174 Ill. 310. See, also, McCornack on Insurance, sec. 235; 1 Cooley's Briefs on the Law of Insurance, 236, 635; 17 Laws of England, (Halsbury,) 572.

Manifestly, under these authorities the purposes for which the relators desire to incorporate might be classed either as guaranty insurance or casualty insurance. An examination of the insurance laws of the various States authorizing the incorporation of companies shows that in some States the class of insurance business proposed to be done by relators may be carried on by guaranty insurance companies, in others by casualty insurance companies, and in still others by either class of companies. In this State companies incorporated under different acts can do, in part, the same kind of business. Under whatever name they are known such contracts are regarded as insurance contracts, and, as such, subject to the rules of construction applicable to insurance policies generally, and not to the rules applied to ordinary guaranty or surety contracts for accommodation. *United States Fidelity Co.* v. *First Nat. Bank,* 233 Ill. 475; Frost on Guaranty Insurance, (2d ed.) sec. 3.

Definitions of insurance obviously are not decisive on the question here under consideration as to which one of these acts relators are entitled to incorporate under. The intent of the legislature in passing these acts can be best sought from their wording. Under the Casualty act companies may be incorporated for insuring persons against bodily injury or death resulting from accident; against loss or damage resulting from injury suffered by an employee or other person, for which accident the person insured is liable; to indemnify merchants and traders against loss or

damage on account of credit given; against loss by burglary or theft; against loss by breakage of glass; against loss from accidents or explosions of boilers and engines, elevators, or machinery connected therewith; and, in addition, they may be incorporated under the seventh paragraph heretofore quoted. We see nothing in any of the first six of these purposes that is at all similar to that for which relators desire to incorporate the company here in question. The provision which comes nearest being so is the indemnifying of merchants and traders as to the credit of their customers. On the other hand, the purpose for which relators desire to incorporate is included specifically in the wording of the Surety act,—that is, "for the purpose of guaranteeing * * * the performance by persons, firms and corporations of contracts, bonds, recognizances and indebtedness of every kind," etc. The non-payment of a note or the non-performance of any of the provisions of a mortgage or deed of trust, without question is a breach of a contract or undertaking the performance of which can be guaranteed. In one of the earliest cases in this country involving guaranty insurance it was practically so held. (*Ellicott* v. *United States Ins. Co.* 8 Gill & Johns. 166.) The right to form a corporation for such purposes is clearly within both the letter and spirit of the Surety act. No authority called to our attention would prevent classifying under the term "guaranty insurance" the guaranteeing of loss for the non-payment of notes or other contracts of like nature.

It is argued by counsel for appellee that the Casualty act was copied very largely from an act in relation to insurance corporations passed in New York in 1892. That act appears to have authorized the formation of companies to insure against practically all the losses that are covered either by the Surety act or the Casualty act in this State. If there be any argument to be derived from a comparison of the two laws, it would tend to uphold the argument of

relators that by leaving out of the Casualty act the right to guarantee the fidelity of persons holding places of public or private trust and the performance of contracts and inserting that class of insurance in the Surety act the legislature did not intend, except as specifically provided in said Casualty act, that insurance companies should be organized under said Casualty act to guarantee, generally, against losses under contracts.

Counsel for appellee concedes that the legislature intended, under the Surety act, to permit corporations to be organized guaranteeing against contracts of every kind of a general nature, such as construction and similar contracts, which are governed by the general laws of contracts, but argues that it did not intend that corporations organized under the Surety act should insure against loss for the non-payment of notes, mortgages or deeds of trust. We see nothing in the reading of said Surety act that justifies any such distinction. It authorizes the incorporation of corporations for the purpose of guaranteeing the performance of contracts of "every kind" and of becoming surety "on every kind of contract."

Counsel for appellee further argues that the question here involved is at least doubtful, and that therefore, where a department of government has, in the absence of judicial interpretation, construed a statute in a certain way the courts will adopt such construction. That question, in our judgment, is not in the record. If so, the pleadings here tend to show (and no evidence was offered) that there had not been any uniform construction on this question. Appellee in his answer simply states that he has heretofore interpreted the act as he now contends and that it has been so "uniformly interpreted by several prior incumbents of the office of insurance superintendent." The pleadings do not say that all prior incumbents have so construed this act. Pleadings must be most strongly construed against the pleader.

264 — 34

It is further argued that the public would be better protected if the relators were compelled to incorporate under the Casualty act rather than under the Surety act. That question is one that must be addressed to the legislature. The courts can only construe statutes as they find them. The intent of the legislature is the law. This court must assume that the legislature had in mind the meaning of the word "contract," and of the words "guaranty" and "casualty," when they passed the Surety act. Under the natural and ordinary meaning of those words, in the light of the decisions heretofore cited, we see no escape from the conclusion that the relators are entitled to incorporate under the Surety act.

Counsel for appellee further argues that the relators are not entitled to be incorporated under said Surety act because, in their statement as to the purposes of the incorporation, they used the words, "to guarantee and secure the payment and satisfaction of notes, bonds and coupons, or other evidence of indebtedness secured by mortgage or deed of trust conveying real estate," which are not used in the wording of the Surety act; that if said added words of the declaration are identical in meaning with the part of the statement of purpose which follows the language of the act, then they must be held to be surplusage, and there is no need of having a repetition of or in stating in other language what is already included in the language of the statute, and if they do not mean the same as the language of the statute they are not authorized by the act and should not be included in the statement; that the only safe plan for appellee is to compel incorporators, in their statements, to follow the exact language of the statute. From what we have already said it is clear that the added words express objects or purposes included in the language of the statute, and are therefore, in a sense, a repetition. Section 2 of the Surety act, however, provides that the declaration, after stating the desire to form a corporation for the

purposes named in the act, shall state "such other particulars as may be necessary to explain and make manifest the objects and purposes of the company, and the manner in which it is to be conducted." We see no objection to permitting the corporators to explain, in concise, apt and proper language, the particular kind of bonds and undertakings they propose to guarantee. If such purposes are set out in language clearly within the statute the public authorities should allow the incorporation, even though the statement contains something more than the exact language of the statute. If the insurance superintendent is of the opinion that the declaration contains purposes not authorized by the act, he can, as he has done in this case, refuse to issue the charter. Moreover, if he should grant the charter for purposes not authorized by the act, such charter would only permit the company to carry on business that was within the purposes of the statute. The statement of the purposes of the corporation, as set out in the declaration of the relators, complied with the provisions of this act.

It is suggested by counsel for appellee that the title of the Surety act is not sufficiently broad to cover the class of business which relators propose. "Surety insurance" is generally used as synonymous with "guaranty insurance." (Frost on Guaranty Insurance,—2d ed.—sec. 3; *Gagan* v. *Stevens,* 9 Pac. Rep. 706.) Under the decisions of this court this act is not unconstitutional on the ground that the title does not cover the subject matter of the act. *People* v. *Huff,* 249 Ill. 164; *People* v. *Sargent,* 254 id. 514; *People* v. *Hazelwood,* 116 id. 319.

Counsel for appellee suggests further that this is not a case in which a writ of *mandamus* should issue; that the question here under consideration comes within that class of cases requiring the exercise of official judgment, resting in the sound discretion of the person upon whom a duty is placed by law, and that *mandamus* never lies either to

control the exercise of that discretion or to determine the decision which shall finally be given. The general rule is, that the writ will issue to compel the exercise of a discretionary duty but not that it shall be exercised in any particular way. (*County of St. Clair* v. *People,* 85 Ill. 396; *People* v. *Dental Examiners,* 110 id. 180; *People* v. *Kent,* 160 id. 655; *Beidler* v. *Kochersperger,* 171 id. 563.) The proper construction of a statute, however, does not come within the reasoning of that class of cases. When the legislature has provided a law applicable to a case, it is the duty of the court, when called upon, to see that such law is enforced. The duty is imposed upon appellee to determine whether or not any persons applying for a charter come, by their statement, within the purview of the act. In determining that question he is compelled to decide according to legal principles and construe the law. If he makes a mistake in so construing the law, *mandamus* will lie. (*Chicago, Burlington and Quincy Railroad Co.* v. *Wilson,* 17 Ill. 123; *Town of Somonauk* v. *People,* 178 id. 631; *People* v. *Czarnecki,* 254 id. 72; *State* v. *Town Council,* 27 Atl. Rep. 599.) While this precise question was not discussed in *People* v. *Rose, supra,* or *People* v. *VanCleave,* 187 Ill. 125, in both of those cases the question was necessarily involved and in effect decided in accordance with the rule just laid down, or the court would not have discussed and considered at length the other questions involved in the case; and in *People* v. *VanCleave, supra,* the writ was ordered.

The court below erred in overruling the demurrer to the answer and in denying the prayer of the petition and dismissing the same. The judgment of the circuit court of Sangamon county is reversed and the cause remanded, with directions to that court to sustain the demurrer, and for further proceedings in accordance with the views herein expressed.        *Reversed and remanded, with directions.*