## POSTAL MUTUAL INDEMNITY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110507.   Promulgated August 7, 1944.

*O. D. Brundidge, Esq.*, for the petitioner.
*Donald P. Moyers, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge*: The respondent determined deficiencies in income tax against the petitioner for the years 1937, 1938, and 1939 in the respective amounts of $5,676.12, $3,308.56, and $1,732.18.   By stipulation of the parties, "The sole issue to be decided by the Court in this proceeding is whether the petitioner is an 'exempt' corporation within the purview of section 101 (11) of the Revenue Acts of 1936, 1938, and the Internal Revenue Code, petitioner having waived any and all other contentions raised by the petition or pleadings."

The facts have been stipulated and are found as stipulated.

The petitioner was organized on or about October 12, 1928, as the Postal Casualty Co., the original charter of the company showing it to have been incorporated in accordance with the provisions of chapter 6, title 78 (now repealed [1]) of the Revised Statutes of Texas, as a cooperative or mutual assessment insurance company.   On October 16, 1928, the name was changed to Postal Indemnity Co.

During the taxable years the principal office of the petitioner was located in Dallas, Texas.   The petitioner duly filed corporation income and excess profits tax returns (Form 1120A) for each of the taxable years with the collector of internal revenue for the second district of Texas.

On or about September 30, 1937, the company changed its plan of operation, and changed its name to Postal Mutual Indemnity Co.   This amendment to the charter changed the purposes for which the company was formed to read as follows:

---

[1] Repealed by the 1929 Acts, except as to existing companies, such companies having the right, however, to elect to become subject to the provisions of the 1929 Acts.

The purpose for which this corporation is formed is to transact the business of mutual insurance as provided in the Acts of 1929, 41st Legislature, 1st called session, p. 90, Chapter 40 and known as Articles 4860A–1 to 4860A–19 of the Revised Civil Statutes of the State of Texas of 1925, as amended, and to write all types of insurance authorized by Article 4860A–6, being Section 6 of said Act, as the same now exists or may hereafter be amended.

Paragraph 3 of article I of the company's bylaws reads as follows:

The purpose for which this company is formed is to conduct the business of mutual insurance, without capital stock, in accordance with the provisions of Articles 4860a–1 to 4860a–19. Acts 1929, 41st Legislature of the State of Texas, and amendments thereto.

Paragraph 4 of article V of the bylaws reads as follows:

This company, upon being properly licensed, shall have the authority to issue all forms of insurance permitted under the statutes governing this company. The company shall have the authority to create and maintain such surplus as the Directors may determine. The Directors shall have full discretion and authority to declare and pay from the surplus, such dividends to such policyholders as the statutes governing this company permit, and the company may collect upon such policies with a contingent premium or with an assessment provision, a proportionate part of such contingent premiums or such assessments, as the Directors may determine and as may be either permitted or required under the statutes governing this company.

From the inception of the company until September 30, 1937, the company was authorized to write health and accident insurance only. After September 30, 1937, it was authorized to write any kind of insurance which may lawfully be written in Texas, except life insurance.

During all of the time material hereto, the petitioner operated as a mutual insurance company, and from and after September 30, 1937, operated under the provisions of articles 4860a–1 to 4860a–19, inclusive, of the (Vernon's) Texas Civil Statutes. It continued to write health and accident insurance as well as other kinds of insurance permitted by the statute.

In its annual reports to the Insurance Commission of the State of Texas for the years 1937, 1938, and 1939, the petitioner reported gross premium income and sources thereof as pertained to the various types of policies written by the petitioner and outstanding for each year, as follows:

| Kind of insurance | Gross premium income |
|---|---|
| 1937: | |
| Accident only | $40, 937. 74 |
| Health and accident combined | 93, 365. 62 |
| 1938: | |
| Accident only | 48, 846. 22 |
| Health and accident combined | 88, 268. 66 |
| Auto liability | 30, 114. 27 |
| (a) Other than auto | 4, 059. 62 |
| Workmen's compensation | 31, 796. 26 |

| Kind of insurance | Gross premium income |
|---|---|
| 1938—Continued. | |
| Plate glass | $107.14 |
| Burglary and theft | 77.60 |
| Auto property damage | 11,514.06 |
| Auto collision | 6,219.57 |
| (a) Other property damage | 553.43 |
| Miscellaneous casualty | 8,891.06 |
| 1939: | |
| Accident only | 51,889.93 |
| Health and accident combined | 70,121.99 |
| Auto liability | 53,907.72 |
| (a) Other than auto | 6,511.77 |
| Workmen's compensation | 61,701.60 |
| Plate glass | 146.92 |
| Burglary and theft | 37.60 |
| Auto property damage | 20,505.78 |
| Auto collision | 9,458.07 |
| (a) Other property damage | 1,521.86 |
| Miscellaneous casualty | 15,803.06 |

The petitioner claims exemption from income tax under section 101 (11) of the Revenue Acts of 1936 and 1938 and of the Internal Revenue Code. Section 101 (11) provides exemption to companies or associations named therein, as follows:

(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including inter-insurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses.

The parties agree that the petitioner operated as a mutual insurance company under the statutes of Texas, but we do not understand the petitioner as contending that that fact alone supplies the basis for exemption, and if such contention were made, it would obviously be without merit, since by section 207 of the Internal Revenue Code a tax is imposed on "every mutual insurance company (other than a life insurance company)."[2] Mutual "casualty" insurance companies are exempted from income tax by section 101 (11), *supra*, however, and the question is whether petitioner was, during the taxable years, such a company within the meaning of that section. A very substantial part of the insurance written by the petitioner in each of the taxable years was health and accident insurance, and it is the claim of the respondent that such business is not "casualty" insurance within the meaning of the exempting statute and that the petitioner's claim of exemption accordingly falls. In support of this contention, he cites and relies on article 101 (11)–1 of Regulations 94, promulgated under the Revenue Act of 1936, and the identical regulation promulgated under the Revenue Act of 1938 and the Internal Revenue Code. In so far as here pertinent, article 101 (11)–1 reads as follows:

---

[2] The tax on life insurance companies is imposed by section 201 of the Internal Revenue Code.

The term "casualty" as used in section 101 (11) is limited to those forms of indemnity insurance providing for payment of loss or damage to property or personal injury to third persons resulting from accident or some such unanticipated contingency other than fire or the elements, and does not include indemnity from loss through accident resulting in bodily injury to, or death of, the insured.

The petitioner contends that the regulation is an unreasonable interpretation of the statute, that health and accident insurance is casualty insurance, and that, since petitioner is admitted to be a mutual insurance company, it is a mutual casualty insurance company within the meaning of section 101 (11), *supra*, and therefore exempt.

Section 101 (11) as it appears in the Revenue Acts of 1936 and 1938 and the Internal Revenue Code has stood unchanged since its enactment as section 231 (11) of the Revenue Act of 1926. There was, however, no interpretation by regulation of the term "casualty," as used in that section, prior to Regulations 86, promulgated under the Revenue Act of 1934. Article 101 (11)–1 of Regulations 86 contained the following:

The term "casualty" as used in section 101 (11) is limited to those forms of indemnity insurance providing for payment of loss or damage to property resulting from accident or some such unanticipated contingency other than fire or the elements, and does not include indemnity from loss through accident resulting in bodily injury or death.[*]

Webster's New International Dictionary defines the word "casualty" as follows: "1. Chance; accident; contingency; also, that which comes without design or without being foreseen; an accident. 2. An unfortunate occurrence; a mischance; a mishap; a serious or fatal accident; a disaster." While there may be some question whether sickness is a casualty under the above definition, there can be no question that an accident is a casualty. Here, however, we are dealing with the words as descriptive of fields or types of insurance, and the words "health and accident" are words long accepted as identifying one such type or field of insurance. Examination of some of the recognized textbooks and digests of the law of insurance discloses that health and accident insurance sprang from or grew out of life insurance, and that it is written and designed to afford insurance protection to the person of the insured. Cooley's Brief on the Law of Insurance, vol. 1, pp. 17, 23, and 112; Vance on Insurance, secs. 14, 256, and 257; and Cyclopedia of Insurance Law by Couch, vol. 1, sec. 4, and vol. 5, ch. XVI, part I. Insurance indemnifying the insured against accident to third persons is dealt with by Couch in part II, ch. XVI, vol. 5, under the heading "Property and Liability Insurance."

"Casualty" and "casualty insurance," to borrow the words of the court in *Banker's Mutual Casualty Co.* v. *First National Bank of Council Bluffs*, 131 Iowa 456; 108 N. W. 1046, "are words of quite fre-

---

[*] Of the same tenor were rulings previously made by the Bureau of Internal Revenue. I. T. 2109, C. B. III-2, p. 224 ; I. T. 2113, C. B. III-2, p. 232.

quent use, yet it cannot be said that their definition has been very accurately settled by the courts." From some of the early cases, it would seem that "casualty insurance" meant insurance indemnifying the insured against property damage only. In *Employers' Liability Assur. Corporation* v. *Merrill*, 155 Mass. 404; 29 N. E. 529, one of early, and undoubtedly one of the most cited, cases, the court said:

* * * The form of accident policy at first introduced was substantially that now known as the "general accident policy." This was a contract insuring against accidents happening to the person of the insured. Casualty companies, insuring against the explosion of steam boilers and the breakage of plate-glass, appeared some years before the adoption of the statute of 1879, c. 130, restricting foreign companies to one kind of insurance. * * *

* * * A distinguishing feature of what is known in our legislation as "accident insurance" is that it indemnifies against the effects of accidents resulting in bodily injury or death. Its field is not to insure against loss or damage to property, although occasioned by accident. So far as that class of insurance has been developed, it has been with reference to boilers, plate-glass, and perhaps to domestic animals, and injuries to property by street-cars, and is known as "casualty insurance." * * *

Later, in *Banker's Mutual Casualty Co.* v. *First National Bank of Council Bluffs, supra*, the Iowa Supreme Court had the following to say:

In *State ex rel.* v. *Investment Co.* (Minn.), 50 N. W. 1028, "casualty insurance" is said to have "a well-defined meaning as insurance against loss through accidents resulting in bodily injury or death." But it is perfectly apparent that the insurance against casualty provided for by our state as above quoted has no reference whatever to injuries or losses of this class, for it is expressly treating of property losses as distinguished from losses by personal injury. It comes rather within the definition of the phrase which is given by the Supreme Court of Massachusetts in *Employers Liability Assur. Corporation* v. *Merrill*, 29 N. E. 529, where, in differentiating between accident companies and casualty companies, it classes under the latter head companies insuring against the explosion of steam boilers and breaking of plate glass. * * *

It seems thus apparent that article 101 (11)–1 of Regulations 86, *supra*, and the earlier rulings of the Bureau in limiting casualty insurance to property damage and excluding losses through accidents resulting in bodily injury or death, had support from decided cases. Similarly there is authority for the proposition that "casualty insurance" does include insurance against loss through accident resulting in bodily injury or death. See *State ex rel.* v. *Federal Investment Co.*, 48 Minn. 110; 50 N. W. 1028; *People ex rel.* v. *Potts*, 264 Ill. 522; 106 N. E. 524; and Couch, Cyclopedia of Insurance Law, vol. 1, sec. 13.[4]

⁴ Sec. 13. Casualty Insurance.—In some jurisdictions a distinction, largely based on statutes, is drawn between accident and casualty insurance, the former being held to relate to accidents resulting in bodily injury or death, and the latter to property losses resulting from accident or casualty, such as boiler, plate glass, injury to property by strikes, etc. But as a general rule "casualty insurance" covers accidental injury both to persons and to property. In fact casualty insurance has been defined as an insurance against loss through accidents or casualties resulting in bodily injury or death.

We have found no instance, however, where the term "casualty insurance" has been applied to insurance covering accidents to the person of the insured, such insurance, as noted above, being consistently denominated accident insurance. Furthermore, with respect to health insurance risks, Couch, vol. 5, sec. 1135, has the following to say:

The terms "sickness" and "disease" ordinarily do not include accidental injuries. Distinguishing between health or sickness benefit and accident insurance, it has been declared that the latter applies to cases of disability which are the natural and ordinary results of external physical injury due to accident, whereas sick benefit insurance applies to all cases of disability which are the natural and ordinary results of disease arising from a pathological condition. In other words, sickness benefits cannot be recovered where disability is the result not of a pathological condition, but of an external accident or injury, such as the breaking or injuring of one leg, or an injury to one's eye from the bite of a dog. * * *

We accordingly conclude that the respondent's regulation interpreting the word "casualty" is in keeping with the meaning generally attributed to it when used to denote a type or field of insurance and is therefore a reasonable interpretation of section 101 (11), *supra.*

The petitioner here seeks exemption from income tax under section 101 (11), *supra,* as a mutual casualty insurance company. The facts show that in each of the taxable years a substantial portion of the business written by it was not casualty insurance, but health and accident insurance, which, according to recognized authorities, is a different field of insurance. Section 101 (11), *supra,* grants no exemption to companies writing insurance of that character. The contention of the petitioner is rejected.

*Decision will be entered for the respondent.*