NATIONAL GRANGE MUTUAL LIABILITY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73099. Promulgated November 21, 1934.

*H. C. Kilpatrick, Esq.,* and *O. W. Underwood, Jr., Esq.,* for the petitioner.

*J. C. Maddox, Esq.,* for the respondent.

668

### OPINION.

MURDOCK: The first issue is whether or not the petitioner was exempt from tax under section 103(11) of the Revenue Act of 1928.[1] The respondent contends that farmers' mutual insurance companies are a well-known class of small companies operating within a limited territory; the word " other ", under the rule of *ejusdem generis*,

---

[1] SEC. 103. EXEMPTIONS FROM TAX ON CORPORATIONS.
The following organizations shall be exempt from taxation under this title—
\* \* \* \* \* \* \*
(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses.

should be interpreted to include only such other companies as are similar in character to the farmers' companies, thus excluding mutual companies which are not of a purely local character; the petitioner operates in a number of different states and is not of a purely local character similar to the farmers' companies; and, therefore, the petitioner is not exempt from tax under the above quoted section. He claims that the legislative history of this provision of the act and its predecessors indicates that Congress intended to exempt only a class of small local companies which were well known and recognizable. The petitioner points to the legislative history of this provision to show that Congress, in enacting section 103 (11) of the Revenue Act of 1928, did not intend to limit the exemption to mutual casualty insurance companies of a purely local character.

The precursor of section 103 (11) of the Revenue Act of 1928 was section 11 (a) Tenth of the Revenue Act of 1916. It was reenacted with a slight change in phraseology as section 231 (10) in the Acts of 1918 and 1921, as follows:

Farmers' or other mutual hail, cyclone, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses.

See *Commercial Health & Accident Co.* v. *Pickering*, 281 Fed. 539. The Committee on Ways and Means struck out the words " of a purely local character " in its draft of the Revenue Bill of 1924 and explained:

The words " of a purely local character " in paragraph (10) have been omitted, since all these mutual organizations should be exempt if their income consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses. [Report 179, 68th Cong., 1st sess., p. 24.]

This draft was thereafter changed in other respects, but the words " of a purely local character " were left out as the Ways and Means Committee had recommended and these words have been left out of all subsequent acts. See S. Rept. 398, 68th Cong., 1st sess., p. 29; sec. 1013 (b), Revenue Act of 1924, and 65th Cong. Rec., pt. 8, pp. 8104–8108; sec. 231 (11) of the Revenue Act of 1926. The debates and reports on as well as the provisions of the various acts indicate that Congress intended no such limitation as the respondent now contends for. The language of section 103 (11) was intended to exempt from tax mutual casualty insurance companies the income of which is used or held to pay losses or expenses. The rule of *ejusdem generis* may not be used to misinterpret the intention of Congress when once ascertained. *Mid-Northern Co.* v. *Montana*, 268 U. S. 45; *Danciger* v. *Cooley*, 248 U. S. 319, 326; *United States* v. *Standard Brewery Co.*, 251 U. S. 210; *United States* v. *Mescall*, 215 U. S. 26, 31.

The only other alleged bar to exemption of the petitioner from tax which the respondent has suggested is that the guaranty fund was in fact preferred stock, the so-called interest thereon was a dividend, the payment of this dividend was not an expense, thus income was used or held for purposes other than paying losses and expenses, and the petitioner was a stock company. Cf. *Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523. There are a number of tests to assist in the decision of the question of whether a certain security is a preferred stock or a debt, but each case turns upon its own facts. Debts and preferred stock sometimes have common characteristics, but in some respects they differ. If a security carried voting power it would, no doubt, be preferred stock. But the absence of voting power would not show conclusively that it was evidence of a debt, because preferred stock does not always have voting power. The terminology used by the parties is important evidence but not conclusive. It was called interest. In case the fund was impaired, it was to be restored by assessments upon the policyholders, the only members of the corporation. Preferred stockholders usually take the risk of losses. The payment of the interest did not have to be made from earnings. Dividends on preferred stock usually come out of earnings. The interest was cumulative and had to be paid eventually before the policyholders could receive any distributions. Owners of the fund had no voting powers. The date for payment of the principal was not fixed, but could be fixed by the directors. No feature of this fund which would be absolutely foreign to a debt upon which interest accrues has been called to our attention. Cf. *O. P. P. Holding Corporation*, 30 B. T. A. 337; *Proctor Shop, Inc.*, 30 B. T. A. 721, and cases therein cited. Although in many respects the fund was not distinguishable from preferred stock, the facts in this case lead to the conclusion that this guaranty fund was not in reality preferred stock giving the owner an interest in the corporation, but was an obligation of the corporation on which interest accrued and was paid during the period in question. Thus the petitioner originally borrowed the money to establish its guaranty fund to meet extraordinary losses, but if any part of this fund was ever used to pay a loss, it was to be restored through assessments on the policyholders. Interest upon the money borrowed was an expense. The petitioner operated upon the mutual plan, and the circumstances surrounding the guaranty fund do not prevent it from being the kind of a mutual company which Congress exempted from tax.

The deduction and net loss questions need not be decided, since the petitioner is exempt from tax.

Reviewed by the Board.

*Decision will be entered for the petitioner.*