MANHATTAN MUTUAL LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81821. Promulgated June 14, 1938.

*William R. Baker, Esq.*, and *Philip M. Oviatt, C. P. A.*, for the petitioner.

*James E. Maddox, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding involves a deficiency of $365.45 in petitioner's income tax for 1932. Several of the issues raised in the petition have been abandoned, as set forth in paragraph 3 of the written stipulation filed herein. The remaining issues involve the question of the inclusion in petitioner's gross income of interest accrued on real estate loans at the time the properties were acquired by the petitioner and the question of the deductibility of an amount paid out by the petitioner during the taxable year to the holders of its surplus guaranty fund certificates and claimed as interest payments.

The petitioner was organized as a mutual legal reserve life insurance corporation under the laws of Kansas, 1907, chapter 227, and began doing business June 14, 1918.

During the year 1932 the petitioner acquired title to four parcels of real estate on which it had made first mortgage loans. One of the parcels was acquired by foreclosure sale and the other three by voluntary warranty deeds from the mortgagors in lieu of foreclosure proceedings. The respondent has determined that the interest due and unpaid on these loans at the time the petitioner acquired title to the properties is includable in petitioner's gross income.

The following facts relating to the several parcels and their acquisition by the petitioner are set forth in the stipulation of facts:

(a) Title to the parcel of real estate designated by the petitioner as No. 3, described as Lot 391, Block 2, Manhattan City, Kansas, mortgagor V. B. Ingraham, was acquired by Sheriff's deed at foreclosure sale. The principal of this loan was $3,000.00; the interest due and unpaid on April 25, 1931 (date of foreclosure judgment) was $360.00; the interest due and unpaid for the period between the date of judgment and June 9, 1931 (date of sheriff's sale) was $40.05; the costs of foreclosure and sale were $32.61; taxes of $448.69 consisted of $128.75 due and payable November 1, 1929, $107.46 due and payable November 1, 1930, $119.38 due and payable November 1, 1931 and $93.10 due and payable November 1, 1932. Property insurance premiums paid during the redemption

period by petitioner were $17.35. The petitioner bid in the property at foreclosure sale for the sum of $3,668.87. Such bid was satisfied by off-set of the principal amount of the loan, $3,000.00; interest due and unpaid to April 25, 1931 in the amount of $360.00; interest due and unpaid to June 9, 1931 in the amount of $40.05; the payment of $268.82 being the total of 1929 and 1930 taxes of $128.75 and $107.46 respectively and court costs of $32.61. In addition to the bid price of $3,668.87 petitioner paid the 1931 taxes in the amount of $119.38 and one-half of 1932 taxes in the amount of $46.55, total of $165.93 on December 31, 1932; the remaining one-half of the 1932 taxes in the amount of $46.55 on June 6, 1933; attorney fees of $60.00 on June 9, 1931; recording fees and revenue stamps in the amount of $5.25 on December 31, 1932.

(b) Title to the parcel of real estate, designated by the petitioner as No. 19, described as South 100 feet, Lots 327 and 328, Ward 6, Manhattan, Kansas, mortgagor, O. W. Martin, was acquired by warranty deed from mortgagor, in lieu of foreclosure proceedings, on July 7, 1932. The principal of this loan was $2,500.00; the accrued interest, at date of acquisition of title, was $100.00; taxes of $142.23 were due and payable November 1, 1931 and were paid by the petitioner on January 30, 1933.

(c) Title to the parcel of real estate, designated by the petitioner as No. 20, described as Southeast quarter (¼) and Lots 11, 12, 19 and 20 in section 7, township 9, range 8, Pottawatomie County, Kansas, mortgagor, J. D. Parry, was acquired by warranty deed from mortgagor, in lieu of foreclosure proceedings, on October 14, 1932. The principal of this loan was $7,000.00; the accrued interest, at date of acquisition of title, was $256.67; the cost of abstracting and examination of title was $12.75; taxes of $65.97 were due and payable November 1, 1931 and were paid by the petitioner on October 14, 1932.

(d) Title to the parcel of real estate, designated by the petitioner as No. 24, described as Lot 280 and East 10 feet of Lot 281, Ward 2, Manhattan, Kansas, mortgagor, J. C. Lewis, was acquired by warranty deed from mortgagor, in lieu of foreclosure proceedings, on November 25, 1932. The principal of this loan was $2,400.00; the accrued interest, at date of acquisition of title, was $168.00; the costs of abstracting and examination of title were $5.95; taxes of $146.17 consisted of $55.97 due and payable November 1, 1931 and $90.20 due and payable November 1, 1932, paid by the petitioner as follows: on January 28, 1933 the sum of $45.10, on January 30, 1933 the sum of $55.97 and on June 6, 1933 the sum of $45.10.

In its brief the petitioner concedes that under the decision of the Supreme Court in *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 688, the interest due and unpaid on the loan on the designated parcel No. 3, which was bid in at foreclosure sale for a price equal to or greater than the principal amount of the loan, plus accrued interest, is includable in its gross income. Petitioner contends, however, that the other three parcels, which were all acquired by voluntary deeds from the mortgagors, had values at the time of such acquisition not in excess of the principal amount of the loans, and that the due and unpaid interest on the mortgage notes on these properties is, therefore, not includable in its gross income.

In this contention the petitioner relies upon *Helvering* v. *Missouri State Life Insurance Co.*, 78 Fed. (2d) 778. The court there held that, where a mortgagor surrenders the mortgaged real estate to the mort-

gagee in consideration of the cancellation of the indebtedness on the property, there is an exchange of the loan for the land, and if the value of the land at the time of the exchange is less than the amount of the loan, plus accrued interest, the mortgagee receives payment of the loan and interest only to the extent of such value. We think that this rule is sound and we adhere to it in the instant case. The respondent in his brief makes no argument on the law on this point, but contends that the evidence adduced fails to prove that the fair market value of the three parcels of real estate in question at the time of their conveyance to the petitioner was less than the principal amount of the loans thereon, plus the accrued interest.

On behalf of the petitioner two qualified witnesses testified that none of the three parcels in question had a value at the time acquired by the petitioner in excess of the principal amount of the mortgage loan on it. The respondent did not offer any proof of the value of any of the parcels. On the record before us we find as a fact that at the time they were acquired by the petitioner by voluntary deed from the mortgagors the properties described in paragraphs (b), (c), and (d) of the stipulated facts set forth did not have any value in excess of the principal amount of the loans thereon. We are therefore of the opinion that the petitioner did not receive any interest payment on the mortgage loans on those properties in the taxable year 1932.

The remaining issue involves the question of whether an amount paid by the petitioner during the taxable year to the holders of its surplus guaranty fund certificates is deductible as interest paid on its indebtedness.

During the years 1918, 1919, and 1920 petitioner issued a form of certificate designated as "Surplus Guaranty Fund Certificate", in the aggregate face amount of $50,000. The certificate states on its face that:

This is to Certify, That_____has paid and delivered to

THE MANHATTAN MUTUAL LIFE INSURANCE COMPANY,

of Manhattan, Kansas

The sum of_____DOLLARS, and in consideration thereof is hereby guaranteed a return of six per cent (6%) interest on the par value of this certificate, payable annually, and in addition thereto is guaranteed a pro rata share of a two and one-half per centum fund set aside each year out of all premiums other than first year premiums collected on insurance written by the said Company after the date hereof, which the said sum of_____Dollars, bears to the special operating or Surplus Guaranty Fund of Fifty Thousand Dollars ($50,000) provided for and payable in the manner described by the resolutions duly adopted by the Board of Directors of said Company on the 18th day of January, 1918.

A copy of said Resolution, which appears on the back of this certificate, is hereby referred to and made a part of this certificate.

The resolution of the board of directors referred to in the above quotation reads in part as follows:

*Be it resolved,* That in order to create a special fund for the further advancement of the business of the Company, and to create and maintain a Surplus Guaranty Fund as provided for in Chapter 227 of the Laws of 1907 of the State of Kansas and all amendments thereto, the Board of Directors of this Company hereby authorize the issuance of five hundred (500) certificates of the par value of One Hundred Dollars ($100) each, each of said certificates to represent one share in the fund of Fifty Thousand Dollars ($50,000) to be used for said purpose, and that there shall be paid an annual compensation to the holders of said fund of Fifty Thousand Dollars from the expense fund of the Company, for twenty years.

1st. Interest on the par value of said shares at six per cent (6%) payable annually.

2nd. Two and one-half per cent (2½%) of the total amount of renewal premiums received by the Company in cash on each and all of its policies issued after January 18th, 1918, payable annually in pro rata shares according to the number of certificates issued by the company and held by the purchasers or their assignees;

*Provided, however,* That no portion of the premium on any policy due the first policy year shall be used, set aside, or applied in any way in the formation of said special fund, nor any sums paid therefrom to the holders of said certificates.

The Surplus Guaranty Fund herein provided for shall remain the absolute property of the Company and shall be used as its Board of Directors may direct, but no part thereof shall be paid as a dividend to any holder of these certificates or to any other person.

*Be it further resolved,* That these certificates may be retired at any dividend period after ten years by paying the holders thereof a par value of One Hundred Dollars ($100) for each share of said fund of Fifty Thousand Dollars issued by said Company from the surplus funds of the Company.

But if any of such certificates shall be retired, the renewals as herein provided, for the full period of twenty years on all business written subsequent to the date and prior to the retirement of any certificate issued under this resolution, shall be paid annually to the holders thereof.

*Be it further resolved,* That said certificates shall be sold for One Hundred Dollars ($100) each and that the entire proceeds thereof, less cost and expense of sale, shall be paid into the treasury of the Company.

But such certificates shall constitute no primary liability against such Company, and the payment thereof as herein provided shall in no way hinder or have preference over the sums due policy holders of the Company.

The amounts of the certificates issued in the years 1918, 1919, and 1920 were, respectively, $32,900, $6,200, and $10,900. These amounts as received by the petitioner were credited on its books to surplus account and remained so credited at the close of the taxable year 1932.

The petitioner's surplus as reported to the Commissioner of Insurance of the State of Kansas at the close of the years 1918 to 1932,

inclusive, and the total amounts which the petitioner paid during those years to the holders of the certificates were as follows:

| Year | Surplus | Amount paid to certificate holders | Year | Surplus | Amount paid to certificate holders |
|---|---|---|---|---|---|
| 1918 | $32,900.00 | | 1926 | $18,271.78 | $5,340.00 |
| 1919 | 29,416.67 | | 1927 | 30,288.42 | 6,190.00 |
| 1920 | 28,019.35 | $3,523.39 | 1928 | 41,005.42 | 6,550.00 |
| 1921 | 25,901.10 | 3,438.06 | 1929 | 42,669.85 | 6,645.00 |
| 1922 | 8,747.25 | 3,605.00 | 1930 | 74,151.29 | 6,835.06 |
| 1923 | 8,785.30 | 3,819.31 | 1931 | 82,309.90 | 6,945.00 |
| 1924 | 15,891.60 | 4,065.00 | 1932 | 94,107.07 | 7,100.00 |
| 1925 | 8,327.78 | 4,825.00 | | | |

The amount of $7,100 which the petitioner paid to its certificate holders during the taxable year 1932 was 6 percent of the $50,000 of certificates outstanding, amounting to $3,000, plus 2½ percent of the renewal premiums received by the petitioner during the calendar year 1931 amounting to $4,100. This amount of $7,100 was reported by the petitioner in its annual statement to the Commissioner of Insurance of the State of Kansas as "paid for dividends to the certificate holders."

The petitioner did not claim in its 1932 return, or in any of its returns for prior years, the deduction of the amounts paid to its surplus guaranty fund certificate holders. However, a claim for the deduction of the amounts so paid in 1932 was made by the petitioner in a claim for refund of $1,206.97 which was filed on February 7, 1935. No part of this claim has been allowed by the Commissioner. The amount of tax reported by the petitioner on its return for 1932 and paid during the calendar year 1933 was $1,495.65.

Sections 202 (a) and 203 (a) (8) of the Revenue Act of 1932 provide:

SEC. 202. GROSS INCOME OF LIFE INSURANCE COMPANIES.

(a) In the case of a life insurance company the term "gross income" means the gross amount of income received during the taxable year from interest, dividends, and rents.

SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

\* \* \* \* \* \* \*

(8) INTEREST.—All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title.

The respondent contends that the surplus guaranty fund was not an indebtedness of the petitioner and that therefore the amount which the petitioner paid to the holders of the surplus guaranty fund certificates in 1932 was not interest on its indebtedness within the meaning of the statute, but was a distribution of profits.

This question has been considered by the Board and by the courts in a number of cases, some of which involved facts similar to but not identical with those in the instant case. See *Proctor Shop, Inc.,* 30 B. T. A. 721; affd., 82 Fed. (2d) 792, and cases therein cited. In *Richmond, Fredericksburg & Potomac Railroad Co.,* 33 B. T. A. 895; affd., 90 Fed. (2d) 971, it was held that the payments made by the taxpayer to the holders of its "guaranteed stock," although denominated "dividends," were in reality interest and were deductible as such from gross income. Also, in the still more recent case of *Brush-Moore Newspapers, Inc.,* 37 B. T. A. 787, we held to be deductible, as interest, the payments made to the holder of guaranteed preferred stock which the taxpayer corporation had issued in exchange for its outstanding promissory notes. There, also, the payments of 7 percent were guaranteed. In our opinion in that case we said that the holder of the preferred stock "was entitled to receive, if he demanded it, $28,000 per annum, irrespective of the successful operation of the corporation, or its earnings."

We held in *Policyholder's National Life Insurance Co.,* 37 B. T. A. 60, that the amount which a mutual life insurance company paid during the taxable year to the holders of its "founder's certificates", representing 6 percent interest on the certificates, was not interest paid on an indebtedness, but was a distribution of profits or assets. We pointed out in our opinion in that case that the taxpayer was not obligated to pay interest to the holders of the "founder's certificates", but that the payments were to be made only if the financial condition of the company warranted and in the discretion of the directors. In the instant case it was stated on the face of the certificate that the holder thereof "is hereby guaranteed a return of six percent (6%) interest on the par value of this certificate, payable annually." The resolution authorizing the issue of the certificates likewise provides for the payment of 6 percent interest on the par value of the certificates.

With respect to the payments of the 6 percent interest, the facts here more nearly resemble those in *Richmond, Fredericksburg & Potomac Railroad Co., supra,* and *Brush-Moore Newspapers, Inc., supra,* and we determine accordingly that this amount is deductible from petitioner's gross income as interest paid within the taxable year.

In his brief the respondent makes the alternative contention that in any event the amounts paid to the certificate holders representing the 2½ percent of renewal premiums were distributions of profits and therefore differ essentially from the fixed 6 percent payments, citing *Richmond, Fredericksburg & Potomac Railroad Co.*, *supra*, and *Penn Mutual Life Insurance Co.*, 32 B. T. A. 839; affirmed in part, 92 Fed. (2d) 962. We think that this contention is well made. The payment of this amount was clearly a distribution of earnings, gross earnings, if not net earnings, as distinguished from a payment of interest. These payments were to continue for a period of 20 years whether the certificates were retired in the meantime or not. Certainly, there could be no "interest" after payment of the principal debt.

The amounts representing the payments of 2½ percent of renewal premiums, in our opinion, were not interest payments and are therefore not deductible from gross income as such.

*Judgment will be entered under Rule 50.*