BENJAMIN FRANKLIN LIFE ASSURANCE CO., A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101813.   Promulgated March 12, 1942.

*Valentine Brooks, Esq.,* for the petitioner.
*Arthur L. Murray, Esq.,* for the respondent.

618

OPINION.

KERN: The only question involved is whether the sums paid by petitioner and claimed as interest can be called "interest paid", and deductions therefor allowed under section 203 (a) (8) of the Revenue Act of 1934. We think that they should be allowed.

The California law provided for the advancement of moneys to a corporation doing the business of insurance on the assessment plan and required that the return of the principal and any interest agreed to on the loan "shall be payable only out of the surplus remaining after providing for all required reserves and other liabilities whether required by the laws of this State or any other State in which the

corporation does business and shall not otherwise be a liability or claim against the corporation or any of its assets." The full section is set out in the margin.[2] It will be seen at a glance that the condition of payment in the agreement of June 27, 1934 (certificate of indebtedness No. 4) uses the same language as the statute and was intended to meet the conditions of postponement there required. The three earlier certificates, in postponing repayment of the principal "unless and until the surplus of assets over liabilities of [petitioner including the statutory deposits] exceeds the sum of $25,000", obviously sought the same end. The principal difference is that the first certificate made no provision for payment of interest and the next two agreed to pay over the coupons on bonds deposited with the state commission as interest. This difference is not essential except in so far as it shows the general purpose, since we are here concerned only with the last agreement, that of 1934. The advances are indifferently referred to at different times as "Contributions" and "Donations" in the "Certificates of Indebtedness", but the terminology used is not determinative upon us.

Respondent argues, in the first place, that the obligation to pay principal and interest does not name a day certain, as a negotiable promissory note should, see *Northern Fire Apparatus Co.*, 11 B. T. A. 355, 360; but the answer is that this is not a note. It does not on this account, however, cease to be an acknowledgment of indebtedness both of principal and interest.

Respondent relies on *Policyholder's National Life Insurance Co.*, 37 B. T. A. 60, in which arose the deductibility of certain payments by a mutual life insurance company to the holders of its "founders' certificates", which had been issued to policyholders as an inducement to take and keep policies of the company under the corporation's promise to redeem in capital stock, but the payment of interest "in an amount

---

[2] This section of the Civil Code of California was enacted in 1933 (Calif. Stat. 1933, p. 1310) and superseded in 1935, by a similar provision, section 10745 of the Insurance Code:

"453h. (New) Advancement of Moneys, etc.; Refund Only Out of Surplus. Any officer or director of a domestic corporation doing the business of insurance on the assessment plan under the provisions of this chapter, or any other person, may advance to such corporation any sum of money for the purpose of promoting or conserving its business or to enable it to comply with the requirements of the laws of this or any other State; and the return of such money, together with such interest thereon as may have been agreed upon, not exceeding eight per cent per annum, shall be payable only out of the surplus remaining after providing for all required reserves and other liabilities whether required by the laws of this State or any other State in which the corporation does business and shall not otherwise be a liability or claim against the corporation or any of its assets. No commission or promotion expenses shall be paid in connection with the advance of any such money to the corporation, and the amount of such advance shall be reported in each annual statement. When any such corporation discontinues business, after the payment of or provision for all liabilities, the balance in this fund must be returned to such person, or, if the advance is repaid, to the corporation or disposed of as may be determined by the superior court of the county in which is its principal place of business. (In effect 90 days from and after May 22, 1933, Sec. 1a, Art. IV, Const.; Stats. 1933, Chap. 508.)

not to exceed 6%" was authorized on these certificates provided "the financial condition of the company shall warrant such payment." The "Founders' fund" was risked in the business, we found, the same way as the free surplus; and we held that the "interest" so paid was no different from any other distribution by the company of its profits or assets. The distinctions here are palpable: the holders of the certificates in that case were prospective shareholders, and their claim to the "interest" was itself contingent and no rate was fixed.

More in point here is our decision in *Manhattan Mutual Life Insurance Co.*, 37 B. T. A. 1041. There a newly organized mutual life insurance company issued certificates "to maintain a surplus guaranty fund" as provided by state law, which bore 6 percent interest and were redeemable at par after 10 years at the corporation's option. The holders were also to receive 2½ percent of renewal premiums received by the company after a certain date. The certificates had this limiting condition:

But such certificates shall constitute no primary liability against such Company, and the payment thereof as herein provided shall in no way hinder or have preference over the sums due policy holders of the Company.

We held the interest to be deductible by the company, but not the renewal premiums payments, stating the general problem and the line of distinction between the situation present there and that in *Policyholder's National Life Insurance Co., supra,* in the following language, at p. 1047:

This question has been considered by the Board and by the courts in a number of cases, some of which involved facts similar to but not identical with those in the instant case. See *Proctor Shop, Inc.*, 30 B. T. A. 721; affd., 82 Fed. (2d) 792, and cases therein cited. In *Richmond, Fredericksburg & Potomac Railroad Co.*, 33 B. T. A. 895; affd., 90 Fed. (2d) 971, it was held that the payments made by the taxpayer to the holders of its "guaranteed stock", although denominated "dividends", were in reality interest and were deductible as such from gross income. Also, in the still more recent case of *Brush-Moore Newspapers, Inc.*, 37 B. T. A. 787, we held to be deductible, as interest, the payments made to the holder of guaranteed preferred stock which the taxpayer corporation had issued in exchange for its outstanding promissory notes. There, also, the payments of 7 percent were guaranteed. In our opinion in that case we said that the holder of the preferred stock "was entitled to receive, if he demanded it, $28,000 per annum, irrespective of the successful operation of the corporation, or its earnings."

We held in *Policyholder's National Life Insurance Co.*, 37 B. T. A. 60, that the amount which a mutual life insurance company paid during the taxable year to the holders of its "founder's certificates", representing 6 percent interest on the certificates, was not interest paid on an indebtedness, but was a distribution of profits or assets. We pointed out in our opinion in that case that the taxpayer was not obligated to pay interest to the holders of the "founder's certificates", but that the payments were to be made only if the financial condition of the company warranted and in the discretion of the directors. In the instant case it

was stated on the face of the certificate that the holder thereof "is hereby guaranteed a return of six percent (6%) interest on the par value of this certificate, payable annually." The resolution authorizing the issue of the certificates likewise provides for the payment of 6 percent interest on the par value of the certificates.

In the instant case we have a stronger case to support the taxpayer's claim for the reason that here, unlike *Manhattan Mutual Life Insurance Co.*, there was an obligation to repay before liquidation; and, secondly, the true interest payment there, while distinguishable, was closely allied with the renewal premium distribution. In *Commissioner* v. *National Grange Mutual Liability Co.*, 80 Fed. (2d) 316, affirming 31 B. T. A. 666, the Circuit Court of Appeals for the First Circuit dealt with an analogous situation and resolved it in favor of the taxpayer. There the deduction was claimed by a farmers' mutual accident insurance company of interest payments to its guaranty fund certificate holders as "expenses." The fundamental problem of the company was so like that of the petitioner that we quote the court's statement of it, at p. 318, 319:

* * * The members of the corporation are the policyholders. They are assessed premiums from which expenses and losses are paid. It is desirable, and for certain purposes necessary, that such companies should have a fund called a "guaranty" or "reserve" fund which can be drawn on to pay extraordinary losses. When such companies are organized, it is expected that such a fund will be gradually created out of unused premiums. This, however, takes time; and the fund must be in hand when the company begins business. This necessity was evidently recognized by the organizers of the respondent, and at its organization a guaranty fund was provided by the issue of preferred stock on which dividends if earned were to be paid.

It was later held that this arrangement made the company a stock company and taxable accordingly. In order to avoid such taxation the company was reorganized in 1930, the preferred stock being abolished and retired and in its place a guaranty fund being created by the sale of guaranty fund certificates. It is said that most or all of the preferred stockholders exchanged their stock for guaranty fund certificates. As the guaranty fund was provided for the payment of losses, it was essential that the company's liability for it should be postponed to its liabilities under its policies. It was also desirable, and for certain purposes essential, that the company be under no direct obligation with respect to repayment of the guaranty fund and therefore not obliged to carry it as a liability on its books and statements.

The Court's conclusion was expressed as follows, at p. 320:

* * * The intention of the persons interested in the respondent company clearly was to substitute for the guaranty fund provided by the preferred stock one made up of borrowed money; of this there seems to be no room for doubt. The requirements of the situation compelled them to put the company's obligation to the lenders into a tenuous and unusual form. But the essential character of the obligation, i. e., to repay borrowed money, was not changed. Payments for the use of this money were therefore interest and properly deductible as expenses of doing the business. On this point also we agree with the decision of the Board of Tax Appeals.

We think enough has been said to explain a fact upon which respondent insists; that petitioner did not, in its return to the state insurance commission, recite its obligation to the general manager as a "liability." The clause in the statute providing that the advance "shall not otherwise be a liability or claim against the corporation or any of its assets" would seem to make unnecessary the recital of the advance as a liability of the ordinary kind. Moreover, we can not agree that under this provision in the statute "neither the payment of interest nor principal was obligatory." The plain language of the statute is simply that the advance shall not otherwise be a liability than as previously provided, namely, that it "shall be payable only out of the surplus remaining after providing for all required reserve and other liabilities, whether required by the laws of this state or any other state." The only possible question might be whether payment to the general manager was intended to be postponed until after payment of statutory reserves only or until after payment of all general creditors; and the general import of the language is that repayment of the advance is subordinated only to statutory reserves. It would seem also that the obligation here was payable as soon as petitioner should accumulate a surplus and was not postponed until liquidation, but even if it had been so postponed, the interest would have been deductible. *Commissioner* v. *National Grange Mutual Liability Co., supra.*

The line, as we set out at the outset, is one to be drawn between a creditor and a shareholder. This is made clear in *Commissioner* v. *Schmoll Fils Association Inc.*, 110 Fed. (2d) 611, decided by the Circuit Court of Appeals for the Second Circuit, where former holders of cumulative preferred stock were issued debentures, upon which payments were made which the corporation claimed as interest deductions. The court denied it, citing its earlier decision—*Commissioner* v. *O. P. P. Holding Corporation*, 76 Fed. (2d) 11; and *Jewel Tea Co.* v. *United States*, 90 Fed. (2d) 451; and distinguishing *Commissioner* v. *National Grange Mutual Liability Co., supra.* It mentioned as characteristics of the debentures which resembled cumulative preferred stock, the absence of any fixed maturity date and the subordination to bank creditors in the payment of principal, even on liquidation. The debenture holders, it was said, "do not possess the ordinary right of creditors to obtain unconditional payment of their claims at some time"; and almost the only difference between them and cumulative preferred shareholders, it was pointed out, was that the former could compel payment of interest out of any net earning of the company.

In the instant case there was some uncertainty as to time of payment and, likewise, subordination, but both the uncertainty and sub-

ordination were created by the peculiar nature of the mutual insurance business, a condition which was recognized by the Circuit Court of Appeals for the First Circuit in the *National Grange* case and by the Circuit Court of Appeals for the Second Circuit in the *Schmoll* case in distinguishing that case. This fundamental fact, it seems to us, removes the doubt which otherwise might be present as to whether the general manager was really a creditor or an investor. As a creditor it had no other choice under the law than to accept an obligation payable only on fixed conditions. That it became a creditor subject to such conditions in these circumstances does not convert it into a shareholder. In the *Schmoll* case, on the other hand, every presumption would be that the cumulative preferred shareholders were not very differently circumstanced after the recapitalization from what they had been before, and no extraneous reason appears to justify the taxpayer's contention there that they were. Here the presumption of a loan is supported by the statutory requirement.

We hold that the petitioner's obligation in question was an indebtedness under section 203 (a) (8), and the interest on it was, therefore, deductible.

*Decision will be entered under Rule 50.*