UNION MUTUAL INSURANCE COMPANY OF PROVIDENCE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 657–64, 658–64. Filed September 30, 1966.

*Carl J. Marold*, for the petitioner.
*J. Frost Walker, Jr.*, for the respondent.

The Commissioner determined deficiencies in income tax as follows:

| Year | Deficiency |
|------|-----------|
| 1957 | $6, 192. 54 |
| 1958 | 3, 741. 49 |
| 1959 | 4, 555. 51 |
| 1960 | 1, 341. 77 |
| 1961 | 5, 617. 21 |
| 1962 | 10, 257. 76 |

The issue for decision is whether the Commissioner erred in disallowing for each year a deduction of $35,000 as interest paid on indebtedness within section 822(c)(5).

### FINDINGS OF FACT

The petitioner was incorporated under the laws of Rhode Island. It maintains its books and files its returns on a calendar year basis. Its returns for the years here involved were filed with the district director of internal revenue at Providence, R.I.

---

The petitioner writes fire and other insurance, not including life, and has qualified to transact business as a mutual insurance company in 30 States of the United States and Puerto Rico.

It established and maintains a guaranty fund of $500,000 in order to qualify and do business in the various States and to write policies without contingent liability or contingent premium which would render its policyholders liable to assessment under its charter. Many mutual insurance companies maintain a similar fund.

Insurance authorities of the States require this kind of a fund to be designated as surplus on the insurer's annual statements. An insurance company, in order to do business in a State, must have surplus in regard to policyholders in an amount related to the kind and amount of insurance to be written. It may be in the form of accumulated surplus or a guaranty fund. Losses to policyholders and expenses of the company are payable before payments on the guaranty fund.

The petitioner had issued and outstanding during the tax years, 500 guaranty fund certificates, each in the principal amount of $1,000. From 235 to 293 of those certificates were held during the tax years by owners who were neither policyholders nor directors of the petitioner. $35,000, or 7 percent, was paid as interest on the guaranty fund certificates in each tax year, was deducted on the return as interest under section 822(c)(5) and was disallowed by the Commissioner in determining the deficiency for each year. The payments were made despite losses in 2 years.

The certificate holders and the policy owners each had the right to elect 6 of the 12 directors of the petitioner. All of the directors were policy owners during the tax years.

Interest of not more than 10 percent or less than 7 percent was payable on the certificates if sufficient net profits or unused or unabsorbed premiums were left after payment of expenses and losses and provision for a reserve for reinsurances.

The guaranty fund could be used to pay losses if the corporation had exhausted its assets, including members' liability but exclusive of uncollected premiums.

The certificates had no fixed maturity date or retirement sinking fund. The company had the obligation to pay only the principal amount and the option to retire all outstanding certificates in whole at $1,000 each or in part at any time or from time to time, if it had a sufficient surplus remaining thereafter.

A certificate could be sold, assigned, or transferred under certain stated limiting circumstances and conditions.

All stipulated facts are incorporated herein by this reference.

The payment of $35,000 in each tax year to the holders of the guaranty fund certificates were payments of interest and as such were deductible by the petitioner for Federal income tax purposes.

OPINION

Murdock, *Judge:* This taxpayer, like at least 135 other mutual companies, was required by law to have available reserve funds in order to do business in 30 States of the United States and Puerto Rico. It had to borrow money for that purpose. The usual methods, such as bank and other secured loans, were not available to it and it attracted lenders, in part, by offering 7-percent interest. It thus obtained the use of $500,000 and for the use of that borrowed money it agreed to pay and paid interest amounting to $35,000 every year thereafter, including 2 years in which it operated at a loss. The maximum which the lenders could receive on each guaranty fund certificate was $1,000 of principal and annual interest of 7 percent. No tax benefit or avoidance scheme was involved. There is no reason to disregard the form of the transactions and there is no difference between the form and the substance of those transactions.

The decided cases strongly tend to support the allowance of the deductions claimed herein. No two cases in this general field have facts exactly alike (cf. *Proctor Shop, Inc.*, 30 B.T.A. 721, affd. 82 F. 2d 792) but every important fact in this case was also present and considered in one or more of the decided cases. In three of them, the lenders could elect directors. In several the source of the interest payments was like that in this case. The cases cited below support the conclusion that the $500,000 evidenced by the guaranty fund certificates represented borrowed money and the $35,000 paid annually as "interest" was deductible as interest paid for the use of and forbearance in regard to borrowed money. See, for example, *Commissioner* v. *National Grange Mutual Liability Co.*, 80 F. 2d 316, affirming 31 B.T.A. 666; *Holyoke Mutual Fire Insurance Co.*, 28 T.C. 112; *Property Owners Mutual Insurance Co.*, 28 T.C. 1007; *Citizens Fund Mutual Fire Insurance Co.*, 28 T.C. 1017; *Benjamin Franklin Life Assurance Co.*, 46 B.T.A. 616.

The Commissioner argued in the *National Grange* case "that the guaranty fund was in fact preferred stock, the so-called interest thereon was a dividend [and] the payment of this dividend was not an expense." The Board there held that the guaranty fund units were not preferred stock giving the holders an interest in the corporation, but an obligation on which interest was accrued and paid and the payment of that interest was clearly an expense. That case was reviewed by the Board without dissent and was affirmed on the Commissioner's appeal. The U.S. Court of Appeals for the First Circuit

held that the funds secured by the "guaranty fund certificates" were "borrowed money," although, "The requirements of the situation compelled them to put the company's obligation to the lenders into a tenuous and unusual form." That court held "Payments for the use of this money were therefore interest." The payments in the present case were also interest paid for the use of borrowed money.

The Court in the *Holyoke Mutual* case, referring to the right of the guaranty holders to elect some directors, said, "Their function is analogous in some respects to creditors' representatives in other situations who participate in management of a business to protect the creditors' interest." [1] The Court also said in that case, "The guaranty capital is not equivalent to common stock, for the shareholders [in the guaranty fund] are not entitled to participate in the profits beyond the payments fixed by law. These have been said to be in the nature of interest. *Commonwealth* v. *Berkshire Life Insurance Co.*, 98 Mass. 25 (1867)." The same is true in the present case.

The taxpayer in *Benjamin Franklin Life Assurance Co., supra*, was organized as a mutual company under the laws of California. It obtained the funds required by the insurance commissioner of that State by issuing certificates of indebtedness to the lender of the funds. The certificate there fixed 5 percent as the interest rate and provided that the principal and interest would be payable only out of the surplus remaining after providing for all reserves and other liabilities. The funds obtained were described as a "liability" in "its return to the insurance commissioner." The Court held that the sums paid by the petitioner as interest on the funds covered by the certificates were deductible by it as "interest paid * * * on its indebtedness" within the meaning of section 203 (a) (8) of the Revenue Act of 1934. The question of whether the payments here were interest is not different from the one there decided and it too should be decided for the petitioner. The fact that the cited case involved a mutual life insurance company and the present case involves a mutual "other than life" does not justify a different result here.

We distinguished *Policyholder's National Life Insurance Co.*, 37 B.T.A. 60, in the *Franklin* case and added, "More in point is our decision in *Manhattan Mutual Life Insurance Co.*, 37 B.T.A. 1041." The same reasoning applies here.

The Commissioner here contends that the guaranty fund certificates did not represent a genuine debtor-creditor relationship. He does not argue that they were like common or preferred stock or that they represented an equity interest in the company. He does not say what he thinks they were. They did not represent an equity interest. The

---

[1] The certificate holders also had voting rights in the *Property Owners* and *Citizens Fund* cases.

cases relied upon by the Commissioner are distinguishable on their facts. Cf. *Manhattan Mutual Life Insurance Co., supra.*

Each case must be decided on its own facts. *Proctor Shop, Inc., supra.* Here the debt evidenced by each certificate is in a fixed amount, it represents borrowed money required by law, the interest rate is fixed, the certificates can be transferred, they can be retired in whole or part by the debtor under stated circumstances, the interest has been paid every year, including two loss years, and, considering all of the proven facts, the $35,000 payments in the tax years are deductible as interest on indebtedness within the meaning of section 822(c)(5). Cf. *Commissioner* v. *National Grange Mutual Liability Co.,* and *Benjamin Franklin Life Assurance Co., supra.*

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

TANNENWALD, *J.*, dissenting: I hold to the view that the guaranty fund certificates herein did not create that degree of debtor-creditor relationship sufficient to justify the deduction of the $35,000 paid each year as "interest paid or accrued * * * on indebtedness" within the meaning of section 822(c)(5).

The certificates were in form a promise to pay money advanced and the semiannual payments were designated as "interest." But it is clear that we are not bound thereby in determining the proper treatment of such payments under the Federal income tax laws. See *Benjamin Franklin Life Assurance Co.,* 46 B.T.A. 616, 618 (1942).

Many of the terms of the certificates depart from the standards normally considered sufficiently indicative of an indebtedness to justify the deduction of periodic payments in respect thereof as interest. The semiannual payments herein are to be made only if the net profits or unused or unabsorbed premiums (after all expenses and losses and a reserve for reinsurance) are sufficient.[1] There is no date, short of liquidation of petitioner, on which the principal is required to be paid and, of course, the certificate holders have no way of compelling liquidation. Retirement of the principal amount of the certificates is entirely at the option of petitioner's board of directors and then only if the remaining surplus is in a specified amount. Moreover, the certificates are severely limited as to transferability; petitioner has the right to designate another certificate holder or a policyholder to purchase the certificate at an appraised value not only in the event of a proposed sale, but also in the event of transfer by death, sale on execution, bankruptcy, or insolvency. Finally, the certificate holders

---

[1] On the face of the certificates, it is not clear whether the "interest" payments were cumulative.

have important voting rights, namely, to elect one-half the board of directors.

The cases in this area which might be considered as supporting petitioner's position are clearly distinguishable. *Commissioner* v. *National Grange Mut. L. Co.*, 80 F. 2d 316 (C.A. 1, 1935), affirming 31 B.T.A. 666 (1934); *Benjamin Franklin Life Assurance Co., supra; Manhattan Mutual Life Insurance Co.*, 37 B.T.A. 1041 (1938). In none of these cases were the certificate holders entitled to vote.[2] Nor is there anything to indicate that there were any restrictions whatever on transferability. In *National Grange*, the interest was required to be paid if a mathematically specified level of surplus or profits was reached; in *Benjamin Franklin*, the Court held that the principal as well as the interest was required to be paid as soon as there was sufficient surplus—i.e., at a time prior to liquidation; and in *Manhattan Mutual Life*, the interest was guaranteed and was payable irrespective of surplus or profits.

There is no doubt that, under State law, the guaranty fund was essential to petitioner's underwriting activities. The parties admit that the certificates were issued in order to meet the legal requirements of the various States in which petitioner properly conducted its insurance business. Such being the case, the required semiannual payments of interest quite properly might be considered a normal business expense and, other things being equal, deductible on that basis. But other things are not equal. Petitioner is a member of a special species under the income tax laws. As a mutual insurance company, it has been entitled to special treatment since 1921. See 8 Mertens, Law of Federal Income Taxation sec. 44.01 *et seq.* (1964 rev.). During the years at issue, its taxability was based on its investment income and it was entitled, under the then applicable provisions of section 822, only to certain itemized deductions of which ordinary and necessary business expenses connected with its underwriting activities was not one. Since January 1, 1963, underwriting income is also included in the tax base and such expenses are now deductible. Sec. 823. Whatever may be the proper conclusion as to the deductibility after that date of the type of payments involved herein as ordinary and necessary business expenses, to attempt to classify the certificates herein as "indebtedness" is like trying to fit a square peg into a round hole.[3] Beyond this, I believe that the

---

[2] In *Holyoke Mutual Fire Insurance Co.*, 28 T.C. 112 (1957), *Property Owners Mutual Insurance Co.*, 28 T.C. 1007 (1957), and *Citizens Fund Mutual Fire Insurance Co.*, 28 T.C. 1017 (1957), the certificate holders also had voting rights but the question of deductibility of "interest" was not before the Court.

[3] In view of the fact that the instant case involves taxable years prior to that date, we do not have before us the question of the includability of the payments herein in such category by reason of the fact that the establishment of the guaranty fund was a prerequisite to the conduct of petitioner's insurance business in various States.

majority may unintentionally be providing ammunition in respect of issues, involving the characterization of instruments, which may arise in future cases and cannot now readily be foreseen. I would hold that petitioner's guaranty fund certificates were not "indebtedness" and that consequently the semiannual payments thereon were not "interest paid or accrued." Compare *Pacific Northwest Finance Corporation*, 3 T.C. 498 (1944).

Having reached this conclusion, it becomes necessary to deal with petitioner's alternative assertion that, if the certificates are not "indebtedness" and the semiannual payments are not "interest" within the meaning of section 822(c)(5), it necessarily follows that the certificates are stock. From this, petitioner argues that it is not a mutual insurance company taxable under section 821 and therefore must be taxable under section 831 as an insurance company "other than a mutual insurance company."[4] Petitioner's line of reasoning is not as inexorable as petitioner would have us believe. Assuming without deciding that the certificates partake of the nature of preferred stock, petitioner is nevertheless a mutual insurance company within the meaning of section 821. *Commissioner* v. *National Grange Mut. L. Co., supra*; *Holyoke Mutual Fire Insurance Co.*, 28 T.C. 112 (1957); *Property Owners Mutual Insurance Co.*, 28 T.C. 1007 (1957); *Citizens Fund Mutual Fire Insurance Co.*, 28 T.C. 1017 (1957).

RAUM, DAWSON, HOYT, and SIMPSON, *JJ.*, agree with this dissent.

---

[4] Interestingly enough, the application of sec. 831 to petitioner would appear to produce operating losses with a consequent overpayment of taxes during the taxable years.

