OPINION. Opper, Judge: It cannot now be doubted that the mere existence of a “guaranty fund,”[2] with participating-certificate holders who are allowed to vote, will not alone classify an insurance company, other than life, as a “stock” company under section 204, I. R. C. 1939, rather than a “mutual” company under section 207. Holyoke Mutual Fire Insurance Co., 28 T. C. 112. In many respects that case resembles this one on its facts and, in principle, we find it indistinguishable. The differences relate only to details. Petitioner here was organized under the laws of Minnesota, while the Holyoke company operated in Massachusetts.[3] The guaranty fund there carried cumulative interest at 7 per cent, where here the rate is 10 per cent.[4] Certain provisions relating to the retirement of guaranty funds out of accumulated surplus, see Order of Railway Employees, 2 T. C. 607, may be slightly different in Minnesota from the Massachusetts law. But in no significant respect do we find any distinction in the law or facts governing the two cases. There is a further possible factual (or legal) distinction, the scope of which, however, as the case is presented by respondent, is not entirely clear. In the Holyoke case, the directors elected by the certificate holders were required to be policyholders, whereas under Minnesota statutes certificate holders could elect directors “from their own number.” But the condition of petitioner’s bylaws here is that certificate holders may be directors [5] only if they are policyholders as well. The burden of respondent’s argument throughout both cases seems to be that in practice the certificate holders could, if they wished, control or at least deadlock the company. This would be equally true in the Holyoke situation through the selection by the certificate holders, as directors, of friendly and controllable policyholders, including themselves and relatives and friends, if necessary even by having these become policyholders. Here, as we have said, all of petitioner’s directors were in fact policyholders, and on their face the bylaws required them to be such. The possibility of control was hence no less present in the Holyoke case than here, and its practical exercise here as absent as it was there. We do not regard this as a valid distinction between the two organizations. Other considerations, if not contentions, of respondent are similar to those advanced in Property Owners Mutual Insurance Co., 28 T. C. 1007, and are there disposed of. The Holyoke opinion, to be sure, was filed after the briefs in this proceeding were submitted. But we have had no application from either party to give us the benefit, by way of supplemental briefs, of any contentions that the cases are distinguishable. One other aspect of the problem of “control” may warrant a short additional discussion. The conclusion in the Holyoke case was that, on the facts there present, there was no violation of those powers vested democratically in the policyholders which are presumably prerequisite to the designation of an insurance company as a mutual. See Mutual Fire, Marine & Inland Insurance Co., 8 T. C. 1212, 1217. Respondent contends here that, in fact, votes at the annual meeting could have been or were cast in a preponderant degree by the holders of guaranty fund certificates.[6] We think this contention adequately disposed of by the following quotation from the Holyoke case (p. 117): The respondent says that this company is dominated by the shareholders, since the voters at the annual meeting represent but a few policyholders while more than half the shares of guaranty capital are voted. It is also contended that one shareholder at such a meeting could elect half the board of directors while 100,000 policyholders elected the other half. If this is true it may be pointed out that the converse is also true, one policyholder present could elect half the board while 1,000 shares of guaranty capital chose the other half. There appears to be some question whether the shareholders and policyholders vote separately or as a single group, but we consider it unnecessary to resolve the point. All policyholders have the right to attend and vote and the taxable status oí the petitioner does not depend upon the number who exercise this right. We find it impossible to distinguish in principle Holyoke Mutual Fire Insurance Co., supra, and Property Owners Mutual Insurance Co., supra, and on the authority thereof, Decision will be entered for the petitioner. A “paid-in guaranty fund” is a fund created by advances to a company of sums of money in consideration of the company’s assumption of an obligation to pay an agreed rate of return until the principal is repaid, all payments by the company, both of the annual return and of the principal sum advanced, to be made from surplus only. Demonstrating further this similarity, respondent’s brief in a related case (Property Owners Mutual Insurance Co., 28 T. C. 1007) comments: “In two states there are provisions which expressly permit the guaranty certificate holders to elect half or at least half of the directors of the petitioner. These two states are Minnesota and Massachusetts.” We have found as a fact that the actual amounts received were less than a total of 10 per cent per annum. We have found as a fact that under the bylaws all of petitioner’s directors were actually required to be policyholders. But respondent says as to this: “In regard to the power of the guaranty certificate holders over the operations of the petitioner, the Court’s attention should be invited to provision in petitioner’s by-laws * * * which states in effect that no person shall be elegible [sic] to act as a director unless he is a policyholder. Respondent submits that this provision is invalid because it is in conflict with the articles of incorporation of the petitioner * * * and also with sections 66.08 and 66.12 of Minnesota Statutes Annotated.” The following statements in petitioner’s brief (p. 73) are disputed only collaterally by respondent: The record reveals that the guaranty fund certificate holders never in fact exercised their right to vote or their right to elect directors. All the policyholders had the right to vote and shared in the right to control the company and only policyholders voted at policyholder meetings. If the right to vote, as distinct from the exercise of that right, is important, then the voting power of the guaranty fund certificate holders was not sufficient to effect control. There were 3,500 guaranty fund certificate votes and over 45,000 policyholder votes.